## SHELL PETROLEUM CORPORATION v. JACKSON.

### No. 6697.

Circuit Court of Appeals, Sixth Circuit.
May 17, 1935.

R. J. Foulis, of St. Louis, Mo. (L. M. Graham, of Columbus, Ohio, and Guy A. Thompson, Samuel A. Mitchell, Frank A. Thompson, and Truman Post Young, all of St. Louis, Mo., on the brief), for appellant.

Willis Liggett, of Columbus, Ohio, for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

Upon a somewhat involved factual sequence, questions are presented involving the rights of a lessor named in a written lease defectively executed under Ohio law to recover rent on an implied contract of lease for one year, and her right as assignee of a lease to recover rentals accrued prior to assignment. The appellant was sued as lessee, and from judgment against it on a directed verdict appeals.

The facts so far as material follow: Prior to June 8, 1928, William A. Jackson held a ninety-nine year lease upon certain property in Columbus, Ohio. On that date he sublet to M. W. Carey and Mayo A. Pfaltzgras for a term of fifteen years. The lessees immediately assigned their interest to the Carey Oil & Lubricating Company, a corporation, and in September, 1928, the Carey Oil & Lubricating Company executed an instrument designated a lease to the Roxana Petroleum Corporation, a Delaware corporation, as named lessee. The instrument purported to lease the land here involved for a term of ten years, beginning October 1, 1928, and ending September 30, 1938, for an annual rental of $1,500, payable in equal monthly installments of $125. It was not witnessed and acknowledged by the purported lessor as required by section 8510, General Code of Ohio, and is what is known to Ohio law as a defective lease.

In the meanwhile, Jackson assigned the basic lease to the appellee; Shell Petroleum Company succeeded to all of the assets of the Roxana Petroleum Corporation and became liable for its debts, and the Carey Oil Company on January 30, 1929, assigned

the Carey and Pfaltzgras lease to the appellee, by an assignment reading, "For value received, we hereby transfer and assign all our right, title and interest to the within lease to Catherine L. Jackson." The appellee never received any rent, either from the Roxana Company or its successor, the Shell Petroleum Company. Later she released the property to another tenant at a reduced rental, giving possession on May 1, 1929, but receiving her first rent for the property on August 1, 1929, the new tenant agreeing to make improvements in lieu of rent for May, June, and July.

The suit was for the alleged contract rate of $125 per month for the period January 30, 1929, to August 1, 1929, and for a difference of $10 per month for the unexpired term of the Carey and Pfaltzgras lease. A third item of damage not here material brought the controversy in respect to the amount involved within the federal jurisdiction.

■ It is the law of Ohio that an entry by a lessee under a lease defectively executed for a term of years at an annual rental creates a tenancy only from year to year, if at a monthly rental the tenancy created is from month to month. Wineburgh v. Toledo Corporation, 125 Ohio St. 219, 181 N. E. 20, 82 A. L. R. 1315. When the Carey Oil Company to Roxana Company lease was offered in evidence, the court admitted it for the limited purpose of showing stipulated rental, ruled it defective because not complying with the Ohio statute, but applying what it conceived to be the Ohio law, directed a verdict for ten months' rent for the period October 1, 1928, to August 1, 1929, and for an additional amount to cover the difference in rentals for two months between the contract rate and the rental received by the appellee under her releasing agreement. It will thus be observed that he directed recovery of rentals from the date the rental period was to begin under the terms of the defective instrument, and not from the date of the assignment to the plaintiff, and also for a period for which no recovery was sought in the petition.

The holding in the Wineburgh Case, supra, that a lessee named in a defectively executed lease may be liable for rent after entry upon the leased premises, as upon an implied lease from year to year or from month to month, follows well-established rules. Baltimore & O. R. Co. v. West, 57 Ohio St. 161, 49 N. E. 344; Lithograph Building Co. v. Watt, 96 Ohio St. 74, 117 N. E. 25; Richardson v. Bates, 8 Ohio St. 257; Langmede v. Weaver, 65 Ohio St. 17, 60 N. E. 992. It is not now disputed that the abortive contract was admissible to determine the amount of the rent if the other elements essential to an implied contract for a year are present. The appellant contends, however, that it never by any act of partial performance made itself liable upon any leasing contract, and particularly that it had never made entry. Clearly the burden was upon the plaintiff, no rent having been paid, to prove the entry. The evidence upon this point is meager. Matthew W. Carey, who leased the property after the appellant's alleged default, took possession on the 1st of May, 1929. At that time it was a vacant lot with a partly finished building on it. There is no proof that this building was begun by the appellant or its predecessor, or that either had ever occupied or used it. S. S. Reynolds was an employee of the Roxana Petroleum Corporation, and later of the appellant, who handled the negotiations that led to the execution of the defective lease. He testified that the improvements on the property were there at the time, and that an air line with standards belonging to the appellant, and a sidewalk sign advertising Shell gas were also upon the premises. The pumps did not belong to Shell, and the tanks belonged to the Carey Oil Company. He did not know who ordered the delivery of the air hose or advertising sign. It was his duty to order equipment delivered in such case, and he had never done so. The court ruled that there was no question of entry to submit to the jury. We think this was error. Assuming that the presence of appellant's property on the premises may give rise to a presumption that it was placed there by some one authorized on its behalf to do so, there is still the question whether it was placed there with the intention of taking possession, and where entry is denied, and positive testimony introduced that the only person authorized by the appellant to order the delivery of the property had not done so, we think at most it was a question for the jury, and that the court should not have directed a verdict.

■ The court also erred in permitting recovery of rent prior to the date of the assignment of the Carey and Pfaltzgras lease to the plaintiff. Passing the question of variance between petition and proofs, the assignment did not include unpaid and

accrued rents, and it is well settled that in the absence of an express intention to do so, an assignment of a reversionary interest in a lease will not cover rent already accrued.

Since the case must be retried, it should be said that in our view recovery may be had on the theory of an implied contract for one year, only upon a preliminary finding of the jury under proper instructions that an entry was made upon the premises by the appellant or its predecessor; that maximum recovery is the rental stated in the defective lease from the time of its assignment to the plaintiff, or of entry if made thereafter, to the date when the property was repossessed by plaintiff on May 1, 1929, and for the difference between the contract rate and the rent received from subsequent tenants to the end of the year's term; that betterments and improvements made by the new tenant in lieu of rent are to be construed as rent in diminution of damages; and that the beginning of the rental period is to be determined by the date of entry if entry was made.

Reversed, and remanded for further proceedings consistent herewith.