Suzanna **BLACKWELL**, Petitioner,

v.

**REAL ESTATE COMMISSION of the District of Columbia, Respondent.**

No. 3657.

District of Columbia Court of Appeals.

Argued March 22, 1965.

Decided June 2, 1965.

William C. Gardner, Washington, D. C., for petitioner.

David P. Sutton, Asst. Corp. Counsel, with whom Chester H. Gray, Corp. Counsel, Milton D. Korman, Principal Asst. Corp. Counsel, and Hubert B. Pair, Asst. Corp. Counsel, were on the brief, for respondent.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

QUINN, Associate Judge.

This appeal is from an order of the Real Estate Commission suspending petitioner's brokerage license for a fifteen-day period. The grounds for the suspension were that petitioner had violated Code 1961, § 45–1408(g) and (h) by failing to account for money coming into her possession which belonged to another and by demonstrating such unworthiness or incompetency to act as a licensed real estate broker as to endanger the interests of the public. As we can find no basis for the Commission's de-

cision either in the facts or in the law, it must be reversed.

Pursuant to an agreement signed in January 1963, petitioner collected rents from the subtenants of Mrs. Beatrice Woods, the lessee of certain premises owned by a Mrs. Constance Wilson. On May 1, 1963, the property was sold to the Georgetown Cabinet and Finishing Company (hereinafter referred to as "Georgetown"). Georgetown subsequently contracted with Mrs. Woods to terminate her tenancy on May 15, 1963. Although the testimony is in conflict as to whether petitioner was notified of the change in ownership of the property which she was managing, it is clear that there was no change in her status as Mrs. Woods' agent until the latter's lease terminated on May 15.

One of Mrs. Woods' subtenants was Mrs. Addie Dean whose monthly rent of sixty dollars was due in advance on the fourteenth of each month. On May 15, 1963, she paid this amount to petitioner. Although the Commission's findings of fact state that the rental period covered by this payment was from May 15, 1963, through June 15, 1963, it is abundantly clear from the record, and respondent so concedes in its brief, that the actual period covered was from May 14 to June 14. Petitioner subsequently submitted to Mrs. Woods her regular statement of rental collections, which included the sixty dollars that Mrs. Dean had paid on May 15. After deducting the commissions to which she was entitled, petitioner turned over a sum of money to Mrs. Woods in settlement of their relationship.

The property was again sold on May 28, 1963, this time to a Mr. and Mrs. James Buckley. Georgetown's president told the Buckleys that he was owed the sixty dollars for Mrs. Dean's rent and that they could have it if they could collect it. Consequently they wrote to petitioner asking her to turn the rent money over to them. And Georgetown, despite the fact that it had never before requested this money, asked petitioner to remit it to the new owners. Petitioner refused these demands, stating that she had turned the money over to Mrs. Woods.

After a hearing, the Real Estate Commission suspended petitioner's brokerage license, finding that she had collected the rent from Mrs. Dean without Georgetown's authorization and that she had failed and refused to give an accounting for the money received, converting the same to her own use. The Commission decided that she had violated Section 45-1408(g) [failing to account] and Section 45-1408(h) [demonstrating unworthiness or incompetency], although it specifically stated that she had not violated Section 45-1408(j) [dishonest dealing]. Petitioner does not dispute the Commission's findings that she had not received authorization from and had not accounted to Georgetown for the money collected from Mrs. Dean. She maintains, however, that such authorization and accounting were unnecessary since Georgetown was not entitled to the rent in question. She contends that she correctly turned the rent money over to the only person legally entitled to it, Mrs. Woods, and that the Commission's decision is arbitrary and contrary to law.

On May 14, 1963, the date on which the Dean rent was due, Mrs. Woods was still the lessee of the premises owned by Georgetown. The transfer of ownership on May 1 did not affect her tenancy or that of her subtenants, the new owner taking title subject to the existing leases. Knowles v. Mosher, D.C.Mun.App., 45 A.2d 755 (1946); Achtar v. Posner, 56 A.2d 797 (Md.1948). Thus on May 14, Mrs. Woods had the status of Mrs. Dean's landlord and the sixty dollars' rent was owed to her. The fact that she terminated her lease the next day and that Mrs. Dean's rent was paid in advance did not destroy her right to the money. Rent accrues on the day it is due, even if it is payable in advance, and it belongs to the person who holds the status of landlord on that date. Unpaid accrued rent is personalty and does not pass to the assignee of a lease unless it is specifically assigned to

him, and it is not apportionable between the parties if the transfer occurs during the rental period. Hyde v. Brandler, D.C.Mun. App., 118 A.2d 398 (1955); Velishka v. Laurendeau, 100 N.H. 46, 118 A.2d 600 (1955). Mrs. Woods was thus entitled to the entire Dean rent due on May 14, and petitioner correctly turned it over to her.

Respondent claims that on May 10, 1963, Mrs. Woods relinquished her rights to any rents accruing after that date. This contention is based on sketchy and ambiguous testimony by Georgetown's president that he had agreed with Mrs. Woods that she would collect rent in "his behalf" and that he had prepared a notice to the tenants (which apparently was neither posted nor distributed), stating that Mrs. Woods was "the legal tenant in charge" and that "all payments of rent will be made to her." This testimony shows no evidence of any assignment of rents and even supports petitioner's position that she correctly turned the money over to her principal, for whom she had agreed to collect rents. Moreover, there is no indication that the Commission based its decision on any such assignment.

Respondent also urges that petitioner was under an obligation to make an investigation into the respective rights of the parties. Aside from the fact that the Commission's decision was not based on this ground, we cannot find that petitioner's license should have been suspended for proceeding correctly under the law. She was given no reason to believe that her principal's interest in the property had ceased to exist before May 14, 1963, or that she was not entitled to the rent due on that date. There was no cause for her to investigate.

The decision of the Real Estate Commission that petitioner had violated the Code by failing to account for funds coming into her possession and by converting them to her own use is unfounded as she properly accounted for and paid over these funds to the only person legally entitled to them. Its

decision that she had violated the Code by demonstrating incompetency or unworthiness is equally unfounded. She was never properly notified of any of the changes in the status of the parties which might have affected her. If she had made any mistake in the handling of the rent money, it would have been due in large part to this factor, and in any case it would have been a mere error of judgment not meriting the suspension of her license. Accordingly, the decision of the Real Estate Commission is

Reversed.