**FEDERAL SAVINGS & LOAN INSURANCE CORPORATION, as Receiver for Union Federal Savings & Loan Association, formerly Union Mutual Savings & Loan Association, Plaintiff,**

v.

**C & J OIL COMPANY, INC., et al., Defendants.**

**Civ. A. No. 85–489–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

April 9, 1986.

Winthrop A. Short, Jr., Kaufman & Canoles, Norfolk, Va., Norman Raiden, Associate Gen. Counsel, Federal Home Loan Bank Bd., Washington, D.C., for plaintiff.

Ray W. Grubbs, Christiansburg, Va., Stephen A. Chaplin, Chaplin, Papa & Gonet, Richmond, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiff Federal Savings & Loan Insurance Corporation ("FSLIC") filed this suit hoping to recover amounts allegedly due under a lease originally made between United Leasing Corporation ("United Leasing") and C & J Oil Company, Inc. ("C & J"). The defendants have counterclaimed seeking damages for malicious prosecution. Currently before the court are the defendants' motion for summary judgment and plaintiff's motion for summary judgment on the defendants' counterclaim. For the reasons set forth below, the defendants' motion will be denied, and plaintiff's motion will be granted.

## BACKGROUND

On November 7, 1983, C & J and United Leasing entered into a lease (the "Lease") of certain equipment related to the oil business, consisting for the most part of tanks, pumps and related equipment. Under the terms of the Lease, C & J agreed to payments of $2,602.95 per month for a term of 64 months. The obligations of C & J under the Lease had been guaranteed on October 19, 1983 by defendants Johnston Oil Co., Inc. ("Johnston"), Charles E. Straub, III and Gail E. Straub. The Straubs are both directors and officers of Johnston.

On November 7, 1983, as consideration for a payment from Union Federal Savings & Loan Association (the "Association") to United Leasing in the amount of $100,-000.00, United Leasing assigned the guaranteed Lease to the Association. In connection therewith, United Leasing executed an Assignment of Lease and sent to the Association the original Lease, the original Guaranties and the originals of other documents associated with the Lease.[1] On November 21, 1983, United Leasing recorded UCC financing statements at the Virginia State Corporation Commission and at the Office of the Clerk of the Circuit Court of Montgomery County, reflecting a security interest in the equipment in favor of the Association. In mid-November, 1983, C & J began making monthly payments under the Lease to United Leasing, which in turn forwarded certain payments to the Association.

After the assignment of the Lease to the Association, the Association experienced financial difficulty. On January 26, 1984, the Federal Home Loan Bank Board, pursuant to 12 U.S.C. § 1464(d)(6), appointed FSLIC as the sole receiver for the Association, based on its finding that the Association was insolvent in that its assets were less than its obligations. FSLIC, as receiver, took possession of the Association on January 27, 1984, and succeeded to all rights, title, powers and privileges of the Association and any of its subsidiaries. 12 C.F.R. § 547.7.

On October 8, 1984, after disputes had arisen between FSLIC and United Leasing, counsel for FSLIC sent a letter to C & J demanding that monthly payments under the Lease be thereafter sent directly to FSLIC, rather than to United Leasing. Copies of this letter were sent to the guarantors. Neither C & J nor the guarantors sent any monthly payments under the Lease to FSLIC.

In an effort to resolve the problems regarding the Lease, FSLIC and United Leasing began negotiating for the reassignment of the Lease to United Leasing. On January 14, 1985, FSLIC sent a letter to United Leasing which set forth, among other things, an agreement that FSLIC would assign the Lease back to United Leasing for the sum of $55,000. A week later, FSLIC received by return mail the letter of January 14, 1985 with the signature of United Leasing' president, along with a letter from W.O. Johnson of United Leasing, dated January 16, 1985, making certain requests regarding steps necessary to accomplish the transaction. FSLIC responded with a letter to United Leasing, dated January 30, 1985, which enclosed the documents necessary to accomplish FSLIC's

1. As indicated by its acknowledgement on the Assignment of Lease and its signature on the UCC financing statements, C & J had notice of the assignment of the Lease to the Association.

performance of the agreement set forth in the letter of January 14, 1985.

Three months later, however, United Leasing had still failed to pay FSLIC the $55,000 as set forth in the letter of January 14, 1985. For this reason and others, FSLIC sent to United Leasing a letter dated April 22, 1985 rescinding the agreement set forth in the letter of January 14.

On June 4, 1985, FSLIC filed its first complaint in this action. On June 13, 1985, FSLIC received a check from United Leasing for $55,000. The check came in an envelope containing no correspondence other than a copy of FSLIC's January 30, 1985 letter to United Leasing. FSLIC cashed the check, and sent a letter to United Leasing, dated June 21, 1985, stating that in light of the April recission, FSLIC viewed United Leasing's sending of the check as a new offer to purchase a reassignment of the Lease. The letter further stated that FSLIC was accepting the offer as of June 17, 1985, while specifically reserving the right to recover from C & J payments on the Lease due during the period October 10, 1984 through June 17, 1985.

On June 25, 1985, FSLIC filed the amended complaint currently before the court. The complaint seeks from the defendants amounts due under the Lease for the period October 10, 1984 through June 17, 1985. On July 19, 1985, the defendants filed a responsive pleading which included a counterclaim for malicious prosecution.

## ANALYSIS

FSLIC seeks summary judgment on the defendants' counterclaim. The defendants, on the other hand, seek summary judgment on FSLIC's claim. The court will address these questions in turn.

### A. The Malicious Prosecution Counterclaim

The defendants' counterclaim alleges that the complaint was filed merely to harass the defendants, and seeks compensatory and punitive damages. FSLIC contends that the claim of malicious prosecution is unwarranted, and seeks dismissal of the claim.

Malicious prosecution claims are not favored in Virginia, and thus the requirements for maintaining such actions are more stringent than those applying to most tort claims. This court need not review all the elements of a claim for malicious prosecution, however, because it is apparent that the defendants' counterclaim falters in at least one critical respect.

■ The proceeding on which the defendants' claim is premised has not yet been concluded. It is elementary that an action for malicious prosecution may not be maintained unless the original proceeding from which the claim arises has been terminated in a manner favorable to the party bringing the malicious prosecution action. *Terry v. Genarco, Inc.*, 449 F.Supp. 1015, 1016 (E.D.Va.1978). Since the defendants' counterclaim falters in this respect, plaintiff's motion for partial summary judgment will be granted.

### B. FSLIC's Claim For Arrearages Under The Lease

■ FSLIC's complaint seeks to recover from the defendants the amounts due under the Lease from October 10, 1984 through June 17, 1985. The defendants respond that FSLIC is not entitled to payments under the Lease, and assert that they are entitled to summary judgment.

The controversy centers around the scope of FSLIC's reassignment of the Lease to United Leasing. As the record indicates, there is a disagreement between the parties as to exactly when the reassignment took place. The defendants contend that the reassignment was effective in January 1985, while FSLIC contends it was not effective until June 1985. Because of this disagreement, the court must consider the documents that passed between the parties during this period to determine the potential scope of the reassignment.

The first pertinent document is the January 14 letter from FSLIC to United Leas-

ing, which was later endorsed by United Leasing. The letter states:

United Leasing shall repurchase from the Receiver the interests of the Lessor under the C & J Lease ... on the following terms and conditions:

1. The purchase price for the Receiver's interest as Lessor under the C & J Lease shall be $55,000.00.

2. The repurchases shall be without recourse to or warranty, express or implied, from the Receiver.

3. United Leasing shall pay the purchase price in the aggregate of $55,000 to the Receiver, in cash and within a reasonable time after the execution of the document, free and clear of all claims and any right of offset which United Leasing may have against the Receiver and without prejudice to any claims the Receiver may have against United Leasing for amounts previously offset by United Leasing against amounts owed the Receiver from United Leasing with respect to amounts collected by United Leasing from the Lessors under the Leases.

Following the April FSLIC letter rescinding the January agreement, FSLIC received a check for $55,000 from United Leasing. In response, FSLIC sent the June 21 letter. That letter states, in pertinent part:

The Receiver has accepted this offer as of June 17, 1985, and deposited on that date United Leasing's check in the amount of $55,000.00. Consistent with the terms of the Lease, and the assignment of the Lease to Union Federal, C & J still owes to the Receiver all monthly payments under the Lease from October 10, 1984, when the Receiver made demand on C & J for direct payment of rent under the Lease, through June 17, 1985, when the Receiver accepted the new offer and deposited the $55,000.00 check from United Leasing. The Receiver plans on pursuing collection from C & J of such monthly payments, which total $23,426.55, as well as our attorney fees and interest.

The foregoing is, of course, without prejudice to any claims the Receiver may have against United Leasing for amounts previously offset by United Leasing against amounts owed the Receiver from United Leasing with respect to amounts collected by United Leasing from C & J under the Lease.

United Leasing did not respond to the June 21 letter.

Whether the reassignment was effective in January or June 1985, the defendants claim that FSLIC assigned the right to arrearages due from C & J under the Lease to United Leasing. This assignment, they contend, prevents FSLIC from seeking to collect those arrearages in the present action. There is little question that FSLIC could have assigned the arrearages under the Lease to United Leasing. *See* 2A *Michie's Jurisprudence of Virginia and West Virginia*, Assignments, §§ 7–14. The question before the court, then, is whether FSLIC did assign the arrearages.

In construing an assignment, Virginia courts look to substance rather than form, and an assignment may be actionable if it shows a clear intent to transfer an identified chose in action. *Lataif v. Commercial Indus. Const., Inc.*, 223 Va. 59, 286 S.E.2d 159, 161 (1982). Attendant and surrounding circumstances may aid in the identification of the chose assigned. *Id.*

Considering first the possibility that the June reassignment will be found the effective one, the court believes that FSLIC did not assign the right to arrearages under the Lease to United Leasing. In the first instance, there is no language in the June 21 letter indicating that such an assignment was taking place. More important, however, there is language in the letter specifically noting that FSLIC planned to pursue C & J for the arrearages. These circumstances lead the court to identify the chose assigned in the June correspondence as solely the Lease, and not the arrearages.

Considering next the possibility that the January reassignment is found to be the effective one, the court again believes that FSLIC did not assign the right to arrearag-

es under the Lease to United Leasing. In this instance, again, the endorsed January 14 letter does not contain any language indicating that such an assignment was taking place. The circumstances surrounding the endorsed January 14 letter, however, do not aid the court in identifying the chose in action assigned. For this reason, the court must take an additional analytical step.

The lease in question in this case involved personal property. It is well established in leases involving real property that absent a clearly expressed intention to the contrary, the assignment of such a lease does not transfer the right to rental payments already accrued but unpaid at the time of assignment. *See, e.g., Blackwell v. Real Estate Commission*, 210 A.2d 544, 545–46 (D.C.App.1965); *Velishka v. Laurendeau*, 100 N.H. 46, 118 A.2d 600, (1955); *Shell Petroleum Corporation v. Jackson*, 77 F.2d 340, 341–42 (6th Cir.1935). The same principle has been applied to the assignment of contracts involving personality. *See, e.g., National Reserve Co. v. Metropolitan Trust Co.*, 17 Cal.2d 827, 112 P.2d 598, 602 (1941) (participation certificates); *Pennsylvania Exchange Bank v. Lasko*, 4 Misc.2d 1039, 159 N.Y.S.2d 429, 432 (Sup.Ct.), *reversed on other grounds*, 4 A.D.2d 206, 163 N.Y.S.2d 864 (1957) (automobile). *See also Hanna v. Florence Iron Co.*, 222 N.Y. 290, 118 N.E. 629 (1918). Indeed, the principle is so well recognized that Professor Williston has stated "[t]he assignment of rights under a continuing contract does not imply an assignment of rights of action for previous breaches of the contract...." 3 Williston *Contracts* § 431 (1960).

The parties have been unable to find any cases ruling on the issue in the context of leases of personal property, and the court's research has not turned up any cases. Since this case involves the interpretation of Virginia law, this court is bound to apply the law that it appears the highest court of Virginia would apply. *See Brendle v. General Tire & Rubber Co.*, 505 F.2d 243, 245 (4th Cir.1974).

The defendant has not offered any reason why the rule applied in other jurisdictions to assignments of leases of real property and contracts involving personality should not apply to assignments of leases of personality. In addition, the court is unable to discern any reason why the rule should differ. For this reason, this court is confident that the Virginia Supreme Court, were it faced with this question, would adopt the following rule set forth by Justice Traynor in the context of a contract involving personality, and apply it to assignments of leases involving personality:

> Unless an assignment specifically or impliedly designates them, accrued causes of action arising out of an assigned contract, whether *ex contractu* or *ex delicto,* do not pass under the assignment as incidental to the contract if they can be asserted by the assignor independantly of his continued ownership of the contract, and are not essential to a continued enforcement of the contract. [citing cases]. If, however, an accrued cause of action cannot be asserted apart from the contract out of which it arises, or is essential to a complete and adequate enforcement of the contract, it passes with an assignment of the contract as an incident thereof. Thus, the assignment of a contract passes from assignor to assignee an accrued cause of action for recision [citing cases], or for reformation [citing case].

*Metropolitan Trust*, 112 F.2d at 602.

Applying this rule to the endorsed January 14 letter, the court concludes that FSLIC did not assign the accrued arrearages under the Lease to United Leasing. The assignment neither specifically nor impliedly designates the arrearages for assignment. In addition, the right to the arrearages can be asserted by FSLIC independently of its continued ownership of the Lease, and it is not essential to the continued enforcement of the Lease.

Thus, whether the Lease was reassigned to United Leasing in January or June, the court concludes that FSLIC did not assign the right to arrearages under the Lease to

United Leasing. For this reason, FSLIC will be entitled to recover those arrearages, and the defendants' motion for summary judgment must be denied.

CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is denied, and the plaintiff's motion for partial summary judgment is granted.