Jack CORMAN, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 470–89C.

United States Claims Court.

Sept. 17, 1992.

Jack Corman, pro se.[1]

Geoffrey Garver, Land and Natural Resources Div., Dept. of Justice, Washington, D.C., with whom was Richard B. Stewart, Asst. Atty. Gen., Attys. of Record, for defendant.

## OPINION

HORN, Judge.

### BACKGROUND

This case is before the court on the defendant's motion for partial summary judg-

---

1. Plaintiff, Jack Corman, appears in this action *pro se.* At the oral argument in the above-captioned case, however, he represented to the court that he is an attorney, licensed to practice law in the State of Texas.

ment, and the plaintiff's cross-motion for summary judgment. Plaintiff, Jack Corman, brought this action under the Contract Disputes Act of 1978. 41 U.S.C. §§ 605(a)–(c) (1988). The jurisdiction of this court is uncontested under 28 U.S.C. § 1491 (1988). This case was filed as an action for breach of contract arising from a General Services Administration (GSA) schedule lease for real property located at 3030 Stemmons, Dallas, Texas. In the complaint filed with this court, plaintiff seeks a total of $5,651.80, plus interest, costs and attorney's fees, as the sum of the unpaid lease payments and compensation due for physical damage to the property done by the defendant prior to vacating the property.[2]

After a thorough review of the cross-motions, the supplemental briefs filed on those motions, and following the oral argument held on July 15, 1992, the court, hereby, GRANTS the plaintiff partial summary judgment. The defendant's motion for judgment on the pleadings or for partial summary judgment is, therefore, DENIED.

## FACTS

On June 15, 1982, the plaintiff, Jack Corman, and the United States General Services Administration entered into a General Services Administration Standard Form Lease, No. G–07B–11644, pursuant to which the defendant leased the plaintiff's property at 3030 Stemmons, Dallas, Texas, for a five-year term, beginning August 27, 1982 and ending August 26, 1987. The defendant agreed to pay annual rent of $72,540.16, at a monthly rate of $6,045.01.[3] The defendant occupied and paid rent on the leased premises for the full lease term.

By means of a supplemental lease agreement, executed on July 24, 1987, the parties amended the lease to extend its term from August 27, 1987 through August 26, 1988, at an annual rental rate of $74,568.62. The defendant occupied and paid rent on the leased premises for the full term of the lease extension, pursuant to the July 24, 1987 amendment.

In addition to extending the term of the lease for one year, the supplemental lease agreement raised the annual rent from $72,540.16 to $74,568.62, and added a termination provision to the original lease.[4] The supplemental lease agreement further specified that, "[a]ll other terms and conditions of the lease shall remain in force and effect." Thus, the holdover clause, as set forth in paragraph 38 of the Solicitation for Offers R7–18N–82A, which was incorporated by reference into the original lease, remained in effect under the terms of the supplemental lease. Paragraph 38 allowed the government to remain in possession of the subject property after expiration of the amended lease term, on a month to month basis, for up to 90 days. Upon expiration of the lease extension on August 26, 1988, the defendant remained in possession of the leased premises, and did not vacate the premises until October 1, 1988. According to the joint statement of uncontroverted facts, the parties agreed that the defendant

2. Initially, the defendant filed a motion for judgment on the pleadings, or, in the alternative, for partial summary judgment. The plaintiff filed a cross-motion for summary judgment. At the oral argument, the parties agreed and represented to the court that following resolution of the motions for summary judgment on the lease payment issue, they will be able to resolve the balance of the case regarding repair and maintenance of various allegedly damaged fixtures on the leased premises, without the need for further proceedings by the court. This court, therefore, has treated both pending motions as motions for partial summary judgment.

3. In the original lease, the parties agreed to delete the termination clause in paragraph 4 of the Standard Form 65A Agreement, which reads:

The Government may terminate this lease at any time by giving at least _____ days' notice in writing to the Lessor and no rental shall accrue after the effective date of termination. Said notice shall be computed commencing with the day after the date of mailing. (Blank is contained in the original.)

4. The amendment extending the leasehold contains the following termination clause at paragraph 19:

The Government may terminate this lease at any time after January 1, 1988, by giving at least 90 days' notice in writing to the lessor and no rental shall accrue after the effective date of termination. Said notice shall be computed commencing with the day after the date of mailing.

would pay a monthly rental of $6,251.82 during the holdover period. The defendant paid the plaintiff the sum of $7,260.17, by check, for the period from August 27, 1988 through September 30, 1988, and $201.67, by check, for rental for October 1, 1988.

The parties dispute whether the $7,461.84, the sum of $7,260.17 and $201.67 paid by the defendant fully satisfies the government's rent obligation during the holdover tenancy. Clearly, $6,251.82 of the amount paid discharges the rent payable for the month beginning August 27, 1988. The plaintiff asserts that the defendant must pay for two full months' rent (only one of which has been paid), or $12,503.64, for the government's holdover occupancy after the lease had expired, from August 27, 1988 through October 1, 1988. The defendant, in response, alleges that government may pay for one month's rent, and pay only for the prorated, additional days it remained in possession.

On January 20, 1989, the plaintiff submitted a claim for $4,628.18 for unpaid rent and $610.00 for property damage to the designated contracting officer of the General Services Administration. The contracting officer did not issue a decision within 60 days. As a result, the plaintiff filed this action in the United States Claims Court.[5]

## DISCUSSION

Summary judgment in the United States Claims Court is properly granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56 of the Rules of the United States Claims Court (RUSCC) is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed. R.Civ.P.) and is similar in language and effect.[6] Both Rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RUSCC 56(c); Fed.R.Civ.P. 56(c). Rule 56(c) of the Rules of the United States Claims Court provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Rust Communications Group, Inc. v. United States*, 20 Cl.Ct. 392, 394 (1990); *Lima Surgical Associates, Inc., Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), aff'd, 944 F.2d 885 (Fed.Cir.1991).

Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Summary judgment will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.; see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine

---

**5.** Plaintiff's January 20, 1989 letter to the contracting officer states a holdover claim for $4,628.18 reflecting a monthly rental of $6,045.01. This claim does not account for the increase in rental as negotiated in the supplemental lease agreement. The monthly rate set forth in the amended lease and as applicable to the August 27, 1988—October 26, 1988 period is $6,251.82 and is properly stated in the claim before this court. The difference between the monthly rental in the original lease and in the lease as amended accounts for the discrepancy between plaintiff's holdover claim to the contracting officer of $4,628.18 and plaintiff's claim before this court of $5,041.80.

**6.** In general, the Rules of the United States Claims Court (RUSCC) are closely patterned upon the Federal Rules of Civil Procedure (Fed. R.Civ.P.). Therefore, precedent under the Fed. R.Civ.P. is relevant to interpreting the RUSCC, including RUSCC 56(c). *See Imperial Van Lines Int'l, Inc. v. United States*, 821 F.2d 634, 637 (Fed.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. at 2510; *see, e.g., Cloutier v. United States,* 19 Cl.Ct. 326, 328 (1990), *aff'd,* 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250–52, 106 S.Ct. at 2511–12. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied.

■ The fact that, in the instant case, both parties have moved for partial summary judgment, based on the alleged absence of genuine issues of material fact, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)). "Simply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692–93 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969). *See also Levine v. Fairleigh Dickinson Univ.,* 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Cas. & Sur. Co.,*

528 F.2d 1388, 1390 (2d Cir.1976). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.,* 402 F.2d 241, 245 (3d Cir.1968). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States,* 812 F.2d at 1391.

In the instant case, the parties propose divergent legal interpretations of the holdover clause language in paragraph 38 of the Solicitation for Offers R7–18N–82A, which was incorporated by reference into the lease and lease supplement, as signed:[7]

38. Holdover

If, after expiration of the lease, the Government shall retain possession of the premises, the lease shall continue in force and effect on a month-to-month basis not to exceed 90 days. Rent shall be paid *monthly* in arrears on a prorated basis *at the rate paid during the lease term.* (emphasis added.)

The plaintiff maintains that the holdover clause requires the government agency remaining in possession after the expiration of the lease to pay a full month's rent for either each month, or any portion of a month, during which the government has possession. Conversely, the defendant argues that the lease provides for the daily proration of any possession of the property by the government for less than a full month.

---

**7.** Paragraph 7 of the original lease, although inartfully written, expressly incorporates by reference the provisions of the Solicitation for Offers K7–18N–82A. Paragraph 7 reads, "the following are attached and made a part hereof: ... a. SFO [Solicitation for Offers] R7–18N–82A [the one used for the lease at issue] for space B inclusive of Addendum Nos. 1 and 2." It appears that although no punctuation, such as a comma, or conjunctive words, such as "and," were used after the SFO R7–18N–82A, the intention of the drafts must have been to incorporate

the SFO into the lease for both physical spaces A and B under the lease, and for space B also to incorporate Addendum Nos. 1 and 2. The supplemental lease agreement specified that all provisions of the original lease remain in effect. The only change in the supplemental lease was the addition of the termination clause, which had been deleted in the original lease. Therefore, if paragraph 38 of the solicitation was incorporated by reference into the original lease, it would also be incorporated by reference into the supplemental lease.

■ As a general proposition, although a lease may concern and convey a property interest, it is very much a contract, *Keydata Corp. v. United States*, 205 Ct.Cl. 467, 482, 504 F.2d 1115, 1123 (1974). The interpretation of the language of a contract is a question of law, not fact. *See Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed.Cir.1985); *Hol–Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 386, 351 F.2d 972, 973 (1965). Thus, because the parties' dispute centers on the interpretation of the terms of the lease, the issue before the court can be viewed as one of law, which may properly be resolved by the court on summary judgment.

■ When interpreting the language of a contract, or as in this case, a lease, a court must give reasonable meaning to all parts of the agreement and not render any portion meaningless, or interpret any provision so as to create a conflict with another provision of the agreement. *See Fortec Constructors*, 760 F.2d at 1292; *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1555 (Fed.Cir.1983). *Brooklyn Waterfront Terminal Corp. v. United States*, 117 Ct.Cl. 62, 84, 90 F.Supp. 943, 948 (1950), *cert. den.*, 340 U.S. 931, 71 S.Ct. 493, 95 L.Ed. 672 (1951). The language of the agreement must be given the meaning which would be derived from the agreement by a "reasonably intelligent person acquainted with the contemporaneous circumstances." *Hol–Gar Mfg. Corp.*, 169 Ct. Cl. at 388, 351 F.2d at 975.

In the instant case, the original lease was for a five-year term, and the lease extension was for a one-year term. The holdover period for which the plaintiff claims monies are due occurred after the expiration of the lease extension period. Paragraph 38, the holdover provision, makes it quite clear that during a holdover tenancy, the lease continues in effect on a month to month basis, although rent is to be paid "monthly in arrears on a prorated basis...."

The lease provision included in the original lease agreement is paragraph 3, which reads as follows:

The Government shall pay the Lessor *annual rent* of $72,540.16 at the *rate* of $6045.01 in arrears. Rent for a lesser period shall be prorated. (emphasis added.)

In the supplemental lease agreement, the only addition to paragraph 3 is to change the annual rate from $72,540.16 to $74,-568.62, per annum. Paragraph 34, Measurement and Payment, included in the Solicitation for Offers, and also incorporated by reference into the original 5–year lease and into the one-year supplemental lease agreement states, "[r]ent shall be paid monthly, in arrears, and only as provided for by the lease." (emphasis added.)

■ The defendant, nonetheless, argues that the reference to proration is meaningful only if holdover rent is prorated for a lesser period than a month, or on a daily basis. In order to discern the meaning of the term prorated in the lease provision, the defendant cites to *Black's Law Dictionary*. However, the dictionary can provide only a general, out of context, definition, and this court has consistently held that "[i]n interpreting contract terms, 'the context and intention [of the parties] are more meaningful than the dictionary definition'" *Fry Communications, Inc. v. United States*, 22 Cl.Ct. 497, 503 (1991) (quoting *Rice v. United States*, 192 Ct.Cl. 903, 908 428 F.2d 1311 (1970)).

■ Based on a close reading of paragraph 3 of the lease and paragraphs 38 and 34 of the solicitation, which were incorporated by reference into the lease, this court concludes that the term "prorate" refers to proration of the *annual* rental commitment. The reference to "per month in arrears" in paragraph 3 of the lease describes the rate of payment, not the time period of the rental. Therefore, in the paragraph 3 sentence, "Rent for a lesser period shall be prorated," the proration is intended as proration of the annual rental to a monthly rental payment. In fact, with one exception, the references to "monthly," in paragraph 3 of the lease and in paragraphs 34 and 38 describe how payments should be made—on a monthly basis—or at the rate of $6,045.01 per month. The one

exception is an explicit statement in paragraph 38 that a holdover tenancy continues on a month to month basis.

The defendant further argues that federal law governs the rights of parties under a lease contract executed by the United States, but has failed to cite any cases to determine the applicable period of proration in a lease between the government and a private party.[8] At the oral argument, however, this court raised for discussion the recent case of *Ginsberg v. Austin*, 968 F.2d 1198 (Fed.Cir.1992). In that case issued by the United States Court of Appeals for the Federal Circuit, the court wrote:

> 'It is well settled that contracts to which the government is a party—and though a lease may concern and convey a property interest it is also very much a contract— are normally governed by federal law, not by the law of the state where they are made or performed.' *Prudential Ins. Co. of Am. v. United States*, 801 F.2d 1295, 1298 (Fed.Cir.1986), *cert. denied*, 479 U.S. 1086 [107 S.Ct. 1289, 94 L.Ed.2d 146] (1987). Here, though, the parties do not cite, and we have not found, any federal law dispositive of the issue. . . .

Since federal law does not answer the issue, we look to general property and contract law principles as they are embodied in state law pronouncements. *See id.; Forman v. United States*, 767 F.2d 875, 880 (Fed.Cir.1985); *Keydata Corp. v. United States*, 205 Ct.Cl. 467, 504 F.2d 1115, 1123–24 (1974).

*Ginsberg v. Austin*, 968 F.2d at 1200. *See also Brooklyn Waterfront Terminal Corp. v. United States*, 117 Ct.Cl. at 84, 90 F.Supp. at 948.[9] Like the courts in *Ginsberg* and *Brooklyn Waterfront Terminal Corporation*, this court has been unable to discern federal law to conclusively resolve the particular issue in the lease presented for review, whether, in a holdover tenancy, the tenant is responsible for rent payments on a daily or monthly basis. Thus, in accordance with *Ginsberg*, this court turns to state law, in this case, the Texas Property Code.

The Texas Property Code § 91.001 states:

> § 91.001. Notice for Terminating Certain Tenancies
>
> (a) A monthly tenancy or a tenancy from month to month may be terminated by the tenant or the landlord giving notice of termination to the other.
>
> (b) If a notice of termination is given under Subsection (a) and if the rent-paying period is at least one month, the tenancy terminates on whichever of the following days is the later:
>
> > (1) the day given in the notice for termination; or
> >
> > (2) one month after the day on which the notice is given.
>
> (c) If a notice of termination is given under Subsection (a) and if the rent-paying period is less than a month, the tenancy terminates on whichever of the following days is the later:
>
> > (1) the day given in the notice for termination; or

---

**8.** *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411, 68 S.Ct. 123, 125, 92 L.Ed. 32 (1947) (*overruled by United States v. Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958)); *United States v. County of Allegheny*, 322 U.S. 174, 183, 64 S.Ct. 908, 914, 88 L.Ed. 1209 (1944); and *Keydata Corp. v. United States*, 205 Ct.Cl. 467, 482, 504 F.2d 1115, 1123 (1974), to which the defendant cites, stand only for the general proposition, as stated by the defendant, that "Contracts and Leases to which the United States is a party are governed by the general federal law of contract, not state law."

**9.** In *Brooklyn Waterfront Terminal Corporation v. United States*, the United States Court of Claims wrote:

In construing the meaning of a covenant in a lease obligating the Government as lessee to maintain the premises, the applicable law is federal, rather than State, although in absence of federal cases in point the courts may properly turn for guidance to the general law of landlord and tenant. *Girard Trust Co. v. United States*, 149 F.(2d) 872 [ (3rd Cir.1985) ], 161 F.(2d) 159 [ (3rd Cir.1947) ]. The United States, in its leases of private property, is governed by the same rules of liability as would be applicable to a lessee who was a private citizen. *United States v. Bostwick*, 94 U.S. 53 [24 L.Ed. 65 (1876) ].

*Brooklyn Waterfront Terminal Corp. v. United States*, 117 Ct.Cl. at 84, 90 F.Supp. at 948.

(2) the day following the expiration of the period beginning on the day on which notice is given and extending for a number of days equal to the number of days in the rent-paying period.

(d) If a tenancy terminates on a day that does not correspond to the beginning or end of a rent-paying period, the tenant is liable for rent only up to the date of termination.

(e) Subsections (a), (b), (c), and (d) do not apply if:

(1) a landlord and a tenant have agreed in an instrument signed by both parties on a different period or notice to terminate the tenancy or that no notice is required; or

(2) there is a breach of contract recognized by law.

Tex.Prop.Code Ann. § 91.001 (Vernon 1988).

■ Paragraphs (a) and (b) of Texas Property Code section 91.001 provide that when a notice of termination is given in a tenancy from month to month, the tenancy terminates on "whichever of the following days is later: (1) the day given in the notice for termination; or (2) one month after the day on which the notice is given." The plaintiff in this case received written notice of termination from the General Services Administration on September 30, 1988, by letter dated September 29, 1988. Under such circumstances, the Texas Property Code provides for termination of the month-to-month tenancy, one month after the day on which the notice is given.

■ Finally, the doctrine of *contra proferentem* places the risk of latent ambiguity [10], lack of clarity, and absence of proper warning, on the drafting party. As stated by the United States Supreme Court:

> Finally, our interpretation adheres to the principle that, as between two reasonable and practical constructions of an ambiguous contractual provision, such as the two preferred by the Government, the provision should be construed less

favorably to that party which selected the contractual language. This principle is appropriately accorded considerable emphasis in this case because of the Government's vast economic resources and stronger bargaining position in contract negotiations.

*United States v. Seckinger,* 397 U.S. 203, 216, 90 S.Ct. 880, 887–88, 25 L.Ed.2d 224 (1970). Or, otherwise stated, " 'it pushes the drafters towards improving contractual forms[,] and it saves contractors from hidden traps not of their own making.' " *Fry Communications, Inc. v. United States,* 22 Cl.Ct. at 503 (citing *Sturm v. United States,* 190 Ct.Cl. 691, 697, 421 F.2d 723, 727 (1970)). Thus, to the extent there was any ambiguity in paragraph 3 of the lease or paragraphs 34 and 38 of the solicitation, as they were incorporated into the original and supplemental lease agreements, such terms will be construed in favor of the non-drafting party, in this instance, the plaintiff, Mr. Corman.

### CONCLUSION

For the reasons stated above, the court, hereby, GRANTS the plaintiff partial summary judgment for underpayment of rent owed by the government, in accordance with this Opinion. The defendant's motion for summary judgment is, therefore, DENIED. The court, by separate order, will schedule a status conference, at which time the parties should be prepared to present to the court their final resolution of the damages issues. Prior to the status conference, counsel for the parties should consult with each other in an effort to enter into stipulations regarding the outstanding damages due. In the event that an order of stipulation dismissing the case is entered prior to the scheduled status conference, the court will cancel the status conference, and so notify the parties.

IT IS SO ORDERED

---

10. A contract is ambiguous when it sustains the interpretations advanced by both parties to the suit. *Avedon Corp. v. United States,* 15 Cl.Ct. 771, 776 (1988); *Max Drill, Inc. v. United States,*

192 Ct.Cl. 608, 627, 427 F.2d 1233, 1245 (1970); *Sun Shipbuilding & Dry Dock Co. v. United States,* 183 Ct.Cl. 358, 372, 393 F.2d 807, 815–16 (1968).