Scarlett SATO & Paul M. Nakabayashi, Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 94–558C, 94–582C.

United States Court of Federal Claims.

Aug. 14, 1995.

Gerald M. Sato, Westlake Village, CA, for plaintiffs.

Luis M. Matos, Washington, DC, with whom were Assistant Attorney General Frank W. Hunger, and Director David M. Cohen, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This case is before the court on the parties' cross motions for summary judgement, filed pursuant to RCFC 56(c). Plaintiffs sought to recover $20,000 pursuant to the Civil Liberties Act of 1988 (Act), 50 U.S.C.App. § 1989b to 1989b–8 (1988), which provided payment to individuals of Japanese ancestry who were deprived of liberty or property resulting from actions taken by the United States government during World War II. The Department of Justice (DOJ), the Agency charged with administering the funds, determined that plaintiffs were ineligible for compensation under the Act. Plaintiffs sought a reversal of DOJ's denial of redress pursuant to

its regulations, and a finding that DOJ's interpretation under the regulations is unconstitutional, arbitrary, capricious, contrary to law and not based upon historical fact. For the reasons set forth below, the court grants plaintiffs' motion and denies defendant's motion.

## FACTS

Plaintiffs Scarlett Sato and Paul Nakabayashi, are citizens of the United States. Ms. Scarlett Sato was born in Brighton, Colorado on September 8, 1942; she is the daughter of Helen Umetani and George Umetani. Mr. Paul M. Nakabayashi was born in Denver, Colorado on June 17, 1944; he is the son of Frank and Grace Nakabayashi. Plaintiffs and their parents are persons of Japanese ancestry and native born citizens of the United States. All were domiciled in and resided in the State of California.

On March 2, 1942, Public Proclamation No. 1 was promulgated, pursuant to Executive Order 9066, dated February 19, 1942. The proclamation established Military Areas Numbers 1 and 2 and announced the impending exclusion of persons of Japanese ancestry from Military Area No. 1, which included Los Angeles, California, *Sonoda v. United States* (1961) 154 Ct.Cl. 130, 134–135, 1961 WL 8731. Between the issuance of Public Proclamation Nos. 1 and 4, many Japanese Americans then living in Military Area No. 1, to avoid imminent mandatory detention, fled from their west coast homes. Japanese Americans who evacuated the west coast prior to March 27, 1942, did not have unconditionally free movement into the interior, but were required to register their anticipated destinations with a sub-agency of the military, the federal Wartime Civil Control Administration. Among the persons who involuntarily evacuated California during March 1942 were the Umetani family of Terminal Island in the Port of Los Angeles and the Nakabayashi family of Mountain View, California.

Helen Umetani, who was 22 years old during World War II, was pregnant at the time she and her husband George Umetani involuntarily evacuated Terminal Island. The Umetanis eventually relocated in Colorado,

as did many Japanese American families leaving the west coast in March 1942. Mrs. Umetani gave birth to plaintiff, Scarlett Kumano Umetani, on September 8, 1942. Frank and Grace Nakabayashi, along with their six-month old infant daughter, were forced by the federal government to evacuate from Mountain View and also relocated in Colorado. Plaintiff Paul Nakabayashi was born in Denver on June 17, 1944.

The alleged "involuntary" relocation of the family to Colorado resulted in great hardship for the Umetani and Nakabayashi families. For example, health services were not readily available to the Umetani family when infant Scarlett contracted scarlet fever. In addition, the adult males in the Nakabayashi family could find work only in agriculture, and the seven members of the family lived in a small room.

On August 10, 1988, Congress enacted the Civil Liberties Act of 1988, which provides monetary redress to individuals of Japanese ancestry who were adversely affected by certain actions taken by, or on behalf of, the United States Government during World War II. 50 U.S.C.App. § 1989b–7(2)(B). The Act was adopted as an acknowledgement of an official apology for the fundamental injustice of the government's policy of evacuation, relocation, and internment of United States citizens and permanent resident aliens of Japanese ancestry during World War II. 50 U.S.C.App. § 1989(1) and (2).

The Act defines the term "eligible individual" as follows:

> "Eligible individual" means any individual of Japanese ancestry who is living on the date of the enactment of this Act [August 10, 1988] and who, during the evacuation, relocation, and internment period [December 7, 1941 to June 30, 1946]—
>
> (A) was a United States citizen or a permanent resident alien; and
>
> (B)(i) was confined, held in custody, relocated, or otherwise deprived of liberty or property as a result of [the laws and orders associated with Executive Order No. 9066 in effect during World War II].

50 U.S.C.App. § 1989b–7(2).

Under the Act, the Attorney General is responsible for identifying, locating, and paying the sum of $20,000 as compensation to each "eligible individual." 50 U.S.C.App. § 1989b–4(a) and (b). Pursuant to 28 C.F.R. § 74.1–.17, the Attorney General, through the Office of Redress Administration, Civil Rights Division, Department of Justice (ORA), notifies individuals of their potential eligibility and verifies their claims upon receipt of certain background information. If the ORA determines that a person is ineligible, that person has the right to seek reconsideration of such a determination from the Assistant Attorney General for Civil Rights. A claimant may appeal any adverse decision by the Assistant Attorney General to the Court of Federal Claims. *Suzuki v. United States*, 29 Fed.Cl. 688, 690 (1993); 50 U.S.C.App. § 1989b–4(h).

On August 25, 1992, the ORA denied plaintiffs' claims for compensation, concluding that they were not eligible because their "losses were not the result of government action as defined in the Act and the implementing regulations."

On August 27, 1992, Mr. Nakabayashi requested reconsideration of the agency's denial of compensation from the Assistant Attorney General of the Civil Rights Division, as did Ms. Sato on October 12, 1992. The Assistant Attorney General denied Mr. Nakabayashi's and Ms. Sato's reconsideration requests on May 6, 1993, and October 13, 1993, respectively. On August 22, 1994, Ms. Sato filed a complaint with this court, challenging the DOJ's denial of her claim for compensation under the Act. Mr. Nakabayashi filed a similar complaint on September 6, 1994. The court subsequently consolidated these two complaints. On January 17, 1995, Sato and Nakabayashi filed a motion for summary judgement, seeking review of the Assistant Attorney General's denial of their claims. Defendant filed a cross motion on March 20, 1995. The issue in both motions was whether children born after their parents' involuntarily relocation are eligible for recovery under the Act.

## DISCUSSION

■ Summary judgement is appropriate when there are no genuine issues of material

fact, and the moving party is entitled to judgement as a matter of law. RCFC 56(c). In evaluating a motion for summary judgement, any doubt as to whether a genuine issue of material fact exists must be resolved in favor of the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 1608–09, 26 L.Ed.2d 142 (1970); *Campbell v. United States,* 2 Cl.Ct. 247, 249 (1983). A genuine issue of material fact is one that would change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 242, 248, 106 S.Ct. 2505, 2506, 2510, 91 L.Ed.2d 202 (1986); *Chevron U.S.A. v. United States,* 17 Cl.Ct. 537, 540 (1989), *rev'd on other grounds,* 923 F.2d 830 (Fed. Cir.1991). The fact that both parties have moved for summary judgement, does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988). Summary judgment will not necessarily be granted to one party or another, just because both parties have moved for summary judgment. *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992) (*citing LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692–93 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969)). A cross-motion is a party's claim that it alone is entitled to summary judgement. It does not follow, however, that if one motion is rejected the other is necessarily supported. The court must evaluate each party's motion on its own merit, and resolve all reasonable inferences against the party whose motion is under consideration. *Corman,* 26 Cl.Ct. at 1014.

In the case, at hand, there are no material facts in dispute. Both plaintiffs are United States citizens of Japanese ancestry. Plaintiffs' parents, all native born citizens of the United States, had already had their permanent legal residences and domiciles in the State of California. Sato's parents relocated to Ione, Colorado, in 1942, after evacuating their home in Los Angeles, California, which was subsequently declared a prohibited military zone. Likewise, Nakabayashi's parents relocated to Longmont, Colorado, in 1942, after evacuating their home in Mountainview, California, which was subsequently declared a prohibited military zone. Plaintiffs and their parents were prohibited by law from returning to their homes during the evacuation, relocation, and internment period.

Plaintiffs argued that the federal government's invidiously discriminatory policy during the evacuation, relocation, and internment period deprived them of liberty and caused them to suffer severe hardship. Plaintiff contended, therefore, that defendant's denial of their compensation claims was arbitrary, capricious, an abuse of discretion, and not in accordance with law. Defendant responded that plaintiffs were not eligible individuals as defined by the Act because neither the Act, nor its legislative history, intended to provide compensation for children born after their parents were relocated.

■ This court has authority to review the Assistant Attorney General's denial of compensation "upon the administrative record" and shall set aside the denial as unlawful if the denial "is found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 50 U.S.C.App. § 1989b–4(h)(1); *Suzuki v. United States,* 29 Fed.Cl. 688, 690 (1993); 50 U.S.C.App. § 1989b–4(h). In reviewing the Department of Justice's construction of the Act, the court first must look to whether Congress has spoken directly to the precise question at issue, which is whether plaintiffs who were born after their parents relocation are eligible under the Act. *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). *Skinner v. Brown,* 27 F.3d 1571, 1572–73, 1575–76 (Fed.Cir.1994). If it is determined that the language of Congress is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.*

■ This court recently addressed the issue of whether individuals born after their parents' voluntary relocation from prohibited military areas were eligible for compensation under the Act. In *Ishida v. United States,* 31 Fed.Cl. 280 (1994), the court held that the determination that the clause "otherwise deprived of liberty" did not extend to individu-

als born after their parents relocated is a reasonable interpretation of Congress's intent and thus was in accordance with law. However, the court's denial of *Ishida*'s application was recently reversed by the Federal Circuit on the grounds that Congress clearly intended to include as eligible anyone, including later born children of Japanese ancestry, who have been "deprived of liberty" as a result of the laws and orders which caused them to be excluded from their family's place of residence in a prohibited military zone. *Ishida v. United States,* 59 F.3d 1224, 1231–32 (Fed.Cir.1995).

Plaintiffs did not allege that they were "confined" or "held in custody" during the period in question. Instead, they asserted that under the more general language of the Act, which provided redress for individuals who were otherwise deprived of liberty or property as a result of the United States government's action, they are entitled to benefits. They contended that because they were born during that critical time period, to parents of Japanese ancestry who subsequently relocated, they were also deprived of liberty, including their right to return to their domicile, as a result of the laws and orders in effect during the relevant period. Defendant did not dispute that plaintiffs were prohibited by law from returning to their domicile during the evacuation, relocation, and internment period. However, defendant maintained that because plaintiffs were born after their parents had relocated to Colorado, they actually were not evacuated, relocated, or interned, and therefore did not suffer a deprivation of liberty for which Congress intended to provide compensation. In effect, defendant contended that compensation for deprivation of liberty under the Act was limited to those who were evacuated, relocated, or interned during that period.

Contrary to defendant's assertion, the plain and unambiguous language of the Act makes eligible those individuals who have been deprived of liberty or property "as a result" of the laws and orders which caused the evacuation, relocation, or internment of individuals of Japanese ancestry, as well as those individuals confined, held in custody, or relocated. By including the phrase "or otherwise deprived of liberty" as a basis for eligibility, Congress ensured that those individuals of Japanese ancestry who were "deprived of liberty" will be compensated even though they were not confined, held in custody, or relocated. *Ishida v. United States,* 59 F.3d 1224, 1231–32 (Fed.Cir.1995). For this reason, the Act provides compensation for those who suffered deprivations of liberty such as "exclusion" from their domicile as a result of any action taken by the United States. *Id.* As the Federal Circuit held, Congress clearly intended to include as eligible anyone, including a later born child, of Japanese ancestry who has been "deprived of liberty" as a result of the laws and orders which caused them to be excluded from their family's place of residence in a prohibited military zone. *Id.* Thus, the court grants plaintiffs motion for summary judgement.

### CONCLUSION

For the reasons stated above, plaintiffs satisfied all conditions of eligibility set forth in the Act. Therefore, plaintiffs are entitled to compensation. The laws and orders which caused them to be excluded from their family's place of residence in a prohibited military zone otherwise deprived them of liberty within the meaning of the Act. Based on foregoing, defendant's motion for summary judgement is denied, and plaintiffs cross-motion is granted.

**IT IS SO ORDERED.**