**LOCKHEED SUPPORT SYSTEMS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 94–613C.**

United States Court of Federal Claims.

Aug. 21, 1996.

Stan Hinton, Dallas, Texas, for plaintiff. Baker & Botts, L.L.P., of counsel.

Michal L. Tingle, Department of Justice, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. David M. Cohen, Director; Sharon Y. Eubanks, Deputy Director; and Karren Dickson Vance, U.S. Postal Service, of counsel.

## OPINION

FUTEY, Judge.

This contract's case is before the court on cross-motions for summary judgment. Plaintiff, Lockheed Support Services, Inc., seeks to recover general and administrative costs (G & A), as well as overhead and profit,

associated with wage revisions made during the base period of the contracts at issue in this case. Defendant, United States, asserts that the Price Adjustment Clause included in the contracts prohibits recovery of these costs.

### Factual Background

The Postal Service, on behalf of defendant, entered into four contracts with plaintiff seeking services required to support a Remote Bar Coding System (RBCS) at Remote Encoding Sites (RES) for 16 General Mail Facilities (GMF's). Defendant implemented the RBCS to improve and expand its existing automated letter processing capabilities by increasing the volume of mail that could be sprayed with a machine-readable bar code. The contracts called for plaintiff to provide Key Entry Operators (KEO's), who manually addressed mail incapable of being read by the automated system.

Payment for these KEO's was governed by the Service Contract Act of 1965 (SCA), as amended, 41 U.S.C. §§ 351–358, and by the regulations of the Secretary of Labor issued under the SCA. See 29 C.F.R. § 4 (1996). The SCA requirements are incorporated in § H.28 of each contract:

> each service employee employed in the performance of this contract by the contractor or by any subcontractor must be paid (a) no less than the minimum monetary wages and (b) furnished fringe benefits in accordance with the ages and fringe benefits determined by the Secretary of Labor or authorized representative, as specified in any wage determination attached to this contract.

Thus, the contracts ensured the KEO's would be paid at least the federal minimum, stating, "no employee engaged in performing on this contract may be paid less than the currently applicable minimum wage specified under section 6(a)(1) of the Fair Labor Standards Act of 1938, as amended."[1] In order to comply with this requirement, the Contracting Officer (CO) requested wage determinations for the RES in Nashville, Tennessee, from the Department of Labor (DOL) on September 29, 1992. Once the DOL issued those wage determinations, they were incorporated into the contracts.

Defendant awarded the four contracts to plaintiff on May 29, 1992: 104230–92–B–4417, –4418, –4419, –4421. Plaintiff, pursuant to the contracts, agreed to establish a Nashville RES, which would provide services for GMF's located in Santa Ana, California (contract 4417); Ft. Lauderdale, Florida (–4418); Phoenix, Arizona (–4419); and St. Louis, Missouri (–4421). Performance under the contracts proceeded in two phases: (1) a pre-production phase which required plaintiff to conduct training and provide installation support and preparation services; and (2) a two year base period for services on production basis. The contracts also included an option for an additional two year production period.

During the pre-production phase of the contracts, plaintiff contacted the CO and stated the wage determination was inaccurate. In response, the CO told plaintiff to pursue the claim with the DOL. After plaintiff did so, the CO received a letter from the DOL dated September 11, 1992, which enclosed the revised wage determinations for the Nashville area. More importantly, the letter stated that the revised wage determinations must be incorporated into the contracts, pursuant to 29 C.F.R. § 4.5(a)(2),[2]

---

**1.** Pl.Mot. for Summ.J.App.Ex. 4, § H.28(b)(2)(z)(3).

**2.** Section (a) states:

> Any contract in excess of $2,500 shall contain, as an attachment, the applicable, currently effective wage determination specifying the minimum wages and fringe benefits for service employees to be employed thereunder, including any document referred to in paragraphs (a)(1) or (2) of this section;
>
> .    .    .    .    .
>
> (2) Any revision of a wage determination issued prior to the award of the contract or

contracts which specifies minimum wage rates or fringe benefits for classes of service employees whose wages or fringe benefits were not covered by wage determinations, or which changes previously determined minimum wage rates and fringe benefits for service employees employed on covered contracts in the locality.

effective upon the commencement of these contracts. The DOL, however, mistakenly believed the commencement date for all of the contracts was not until September 24, 1992, while the contracts state, and both parties concede, that the contracts had already commenced on May 29, 1992. The revised wage determinations increased the minimum hourly wage for Level I KEO's to $6.75 per hour, and the applicable health and welfare benefits increased to $2.23 per hour. By letter dated September 21, 1992, the CO confirmed to plaintiff that the contracts would be modified to incorporate the wage determinations included in the DOL letter.

On September 23, 1992, the CO issued a unilateral modification to each of the four contracts to incorporate the revised wage determinations. On September 29, 1992, plaintiff advised the CO that, because of the wage changes, plaintiff anticipated problems in qualifying and hiring KEO's at the Nashville RES due to the increased costs involved with the revised wage determinations. More than a year later, plaintiff and defendant agreed to a bilateral modification for the contracts to compensate plaintiff in full for all the direct costs caused by the revised wage determinations. These modifications increased defendant's payments under the contracts by $1,314,082.00. The modifications, however, did not include recovery for G & A, overhead, and profit, which amounted to $639,142.56. On December 30, 1993, plaintiff requested that the CO modify the contracts to compensate for these indirect costs in association with the previously increased direct costs resulting from the revised wage determinations. On February 15, 1994, the CO denied plaintiff's request, referring to the Fair Labor Standards Acts and Service Contract Act–Price Adjustment Clause included in section H.29 of the contracts, which limits compensation due to wage changes. This clause states in section (c):

> When, as a result of determinations of minimum prevailing wages and fringe benefits applicable at the beginning of the renewal option period, or when an increased or decreased wage determination is otherwise applied to this contract, or when as a result of any amendment to the FLSA enacted after award that affects the minimum wage, and whenever such determination becomes applicable to this contract under law, the contractor increases or decreases wages or fringe benefits of employees working on the contract to comply, the contract price or unit price labor rates will be adjusted accordingly. *This adjustment is limited to increases or decreases in Social Security, unemployment, taxes, and workers' compensation insurance, but may not otherwise include any amount for general and administrative costs, overhead, and profit.*[3]

On March 1, 1994, plaintiff submitted four letters to the CO, demanding that the contracts be modified to include G & A, overhead, and profit for the increased labor resulting from the increased wage determinations, claiming it was entitled to a sum of $639,142.56 for the four contracts involved. On March 11, 1994, the CO issued his final decisions denying each of the claims. Plaintiff filed suit in this court on September 14, 1994.

## *Discussion*

### I. *Summary Judgment*

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Jay v. Secretary, DHHS,* 998 F.2d 979 (Fed.Cir.1993) A fact is material if it might significantly affect the outcome of the suit under the governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The party moving for summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the moving party demonstrates an absence of a genuine issue of material fact, the burden then shifts to the non-moving party to show that a genuine issue exists. *Sweats Fashions, Inc., v. Pannill Knitting Co.,* 833 F.2d

---

3. Pl.Mot. For Summ.J.App.Ex. 13 (emphasis added).

1560, 1563 (Fed.Cir.1987). Alternatively, if the moving party can show that there is an absence of evidence to support the non-moving party's case, then the burden shifts to the non-moving party to proffer such evidence. *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2553–54.

▮ The court must resolve any doubts about factual issues in favor of the non-moving party, *Litton Indus. Prods., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir.1985), to whom the benefits of all the inferences and presumptions run. *H.F. Allen Orchards v. United States,* 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). The fact that both parties have moved for summary judgment does not relieve the court of its responsibility to determine the appropriateness of summary disposition. *Prineville Sawmill Co. v. United States,* 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States,* 812 F.2d 1387, 1391 (Fed.Cir.1987)). Summary judgment will not necessarily be granted to one party or another simply because both parties moved for summary judgment. *Corman v. United States,* 26 Cl.Ct. 1011, 1014 (1992) (citing *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.,* 401 F.2d 689, 692–93 (4th Cir.1968), *cert. denied,* 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969)). A cross-motion is a party's claim that it alone is entitled to summary judgment. *A Olympic Forwarder, Inc., v. United States,* 33 Fed.Cl. 514, 518 (1995). It therefore does not follow that if one motion is rejected, the other is necessarily supported. *Id.* Rather, the court must evaluate each party's motion on its own merit and resolve all reasonable inferences against the party whose motion is under consideration. *Id.* (citing *Corman,* 26 Cl.Ct. at 1014). The outcome of the present case depends upon the interpretation of the contracts, which is a matter of law for the court. *Fortec Constructors v. United States,* 760 F.2d 1288, 1291 (Fed.Cir.1985); *Hol–Gar Mfg. Corp. v. United States,* 169 Ct.Cl. 384, 351 F.2d 972 (1965); *National Rural Util. Coop. Financial Corp. v. United States,* 14 Cl.Ct. 130, 136 (1988), *aff'd,* 867 F.2d 1393 (Fed.Cir.1989). Summary judgment is therefore appropriate.

## II. *Contract Interpretation*

Defendant contends that the Price Adjustment Clause applies to the revised wage determinations at issue and concludes that the limitations set forth in that Clause deny plaintiff's recovery of G & A, overhead, and profit. Plaintiff, on the other hand, argues that the Price Adjustment Clause incorporated in the contracts does not cover wage revisions made during the base period of the contracts. Plaintiff concludes that such changes are governed by the Changes Clause, which does not prevent compensation for G & A costs, overhead, and profit.

▮ In interpreting a contract, the contract language must be given the meaning which would be derived from a reasonably intelligent person acquainted with the contemporaneous circumstances. *Hol–Gar Mfg. Corp.,* 351 F.2d 972. Further, a court must give reasonable meaning to all parts of the contract "so as to harmonize and give meaning to all of its provisions", and not render portions of the contract meaningless. *See Fortec Constructors,* 760 F.2d 1288, 1292 (Fed.Cir.1985); *Thanet Corp. v. United States,* 219 Ct.Cl. 75, 591 F.2d 629, 633 (1979).

▮ As quoted above, section (c) of the Price Adjustment Clause covers price adjustments occurring: (1) at the beginning of the renewal option period; (2) when an increased or decreased wage determination "is otherwise applied to this contract"; or (3) when the FLSA is amended after defendant awards the contract.

Defendant contends the wage revision in this case qualifies as a wage determination "otherwise applied to this contract," as governed by the plain language in the second provision of section (c). The court notes, however, that such an interpretation sweeps within its scope the third provision, which covers wage revisions resulting from future amendments to the FLSA. Thus, under defendant's interpretation, the third provision actually becomes incorporated into the second provision, rendering it meaningless to the contracts.

It is significant that there are predetermined instances in which defendant must make wage determinations. Title 29 C.F.R. § 4.4(a)(1) lists these times, stating:

For any contract exceeding $2500 which may be subject to the [Service Contract] Act, the contracting agency shall file with the Wage and Hour Division, Employment Standards Administration, Department of Labor, its notice of intention to make a service contract. With respect to recurring or known requirements, such notices shall be filed not less than 60 days (nor more than 120 days, except with the approval of the wage and Hour Division) prior to: (i) Any invitations for bids, (ii) request for proposals, (iii) commencement of negotiations, (iv) exercise of option or contract extension, (v) annual anniversary of a multi-year contract subject to annual fiscal appropriations of the Congress, or (vi) each biennial anniversary date of a multi-year contract not subject to such annual appropriations, if so authorized by the Wage and Hour Division. Notices with regard to solicitations where such planning is not feasible shall be submitted as soon as possible, but not later than 30 days prior to the above contracting actions. Such notice shall be submitted on Standard Form 98, Notice of Intention to Make a Service Contract, and Standard Form 98–A, or statement containing the information in paragraph (b) of this section and shall be completed in accordance with the instruction provided and shall be supplemented by the information required under paragraphs (c) and (d) of this section.

Form 98, referred to in this section, is used in making wage determinations. *See* 29 C.F.R. § 4.4(d), 48 C.F.R. § 22.1004(b), 48 C.F.R. § 22.1007.

Instances (i), (ii), and (iii) above occur before a contract is executed, and would not be addressed in a contract. The first provision of the Price Adjustment Clause covers the dates for exercising options (as described in instance (iv) above). The two remaining situations addressed above concern wage determinations made for multi-year contracts. In instance (v), a contract subject to annual appropriations is also subject to annual wage determinations, which are made on the anniversary of the contract. In instance (vi), a contract otherwise financed is subject to wage determinations once every two years, which are again made on the contract's anniversary date. The court determines that the second provision of Clause (c) refers to these two remaining instances where wage changes are predetermined. Under this reading, the second provision no longer encompasses the third provision, which covers amendments to the FLSA. Thus, all three provisions have full meaning and do not conflict with each other. The price adjustment at issue, which was made less than four months after the start of these multi-year contracts, does not fall under these circumstances. *See Professional Services Unified, Inc.,* ASBCA No. 45799, 94–1 BCA ¶ 26,580, 1993 WL 531529 (1993) (finding that the contract price adjustment clause did not cover price adjustments applied to a one year contract seven months after contract performance began).[4]

The court notes, however, that wage revisions made outside the Price Adjustment Clause are not prohibited. Rather, such wage revisions are governed by the Changes Clause, and not subject to the recovery limits found in the Price Adjustment Clause. Section H.2.b of the Changes Clause states:

Any other written or oral order (including direction, instruction, interpretation, or determination) from the contracting officer that causes a change will be treated as a change order under this clause, provided that the contractor gives the contracting officer written notice stating (1) the date, circumstances, and source of the order, and (2) that the contractor regards the order as a change order.[5]

The CO received such notification when plaintiff discovered that the original wage

---

4. Plaintiff's interpretation that price adjustments may never be applied to the contract base period under the Price Adjustment Clause is too broad. For example, instance (v) of the C.F.R. allows for wage revisions on the annual anniversary of a multi-year contract. The court interprets (v) as one "otherwise applied to a contract."

5. Pl.Mot. for Summ.J.App.Ex. 15.

**430**

determinations were too low.[6] Thus, the wage changes would fall within this clause. *See Security Services, Inc., v. General Services Administration,* ASBCA No. 11,052, 93–2 BCA 25,667, 1992 WL 364805 (1992) (allowing wage revisions made outside the contract's price adjustment clause).

*Conclusion*

For the reasons discussed above, the court finds that the Price Adjustment Clause does not apply to these wage revisions. Therefore, plaintiff is allowed to recover indirect costs associated with the revised wage determinations. Accordingly, plaintiff's motion for summary judgment is granted, and defendant's motion for summary judgment is denied. The Clerk is directed to enter judgment in favor of plaintiff in the amount of $639,142.56 plus interest from March 1, 1994, as allowed by law. 41 U.S.C. § 611. No Costs.

---

**6.** Def.Mot. for Summ.J.App.Ex. 13–14.