ACHERMAN and another, Respondents, vs. ROBERTSON (LEE), Defendant: ROBERTSON (LESLIE), Appellant.

*April 7—May 5, 1942.*

For the appellant there was a brief by *Kopp & Brunckhorst,* and oral argument by *M. A. McKichan,* all of Platteville.

For the respondents the cause was submitted on the brief of *Snodgrass & Regez* of Monroe.

WICKHEM, J.   Plaintiff Rear is a tenant farmer operating the farm of plaintiff Acherman upon a share basis.   Plaintiffs each owned an undivided one-half interest in ninety-one hogs. Defendant Leslie Robertson is a veterinarian who has practiced since 1915.   Defendant Lee Robertson, twenty years old, is the son of Leslie Robertson.   He had had two and a half years of college training, some of which was in preparation for the study of veterinary science.   In May of 1939 plaintiff Rear discussed with Dr. Robertson the advisability of using mange oil upon his hogs, and was told by Dr. Robertson that he could get it at his office at any time.   On June 9, 1939, Rear called at the doctor's office and found no

one there. He telephoned Dr. Robertson's house and stated his wants to Vera Robertson, wife of Dr. Robertson, and was informed that the doctor was out in the country. Rear stated that he wanted the mange oil that he had talked to the doctor about, and that Mrs. Robertson said that Lee Robertson would get it for him. As a result of the conversation, Lee Robertson went to his father's office. Lee found a group of five-gallon cans exactly alike in style, color, capacity, and dimension. All of the cans were labeled "Mange Oil" except one which was labeled "Liquor Cresolis Sapanetus." All of the cans, excepting the latter, were empty or partially empty. Upon the supposition that the designation on the latter can was the Latin name for "Mange Oil" Lee Robertson delivered this can to Mr. Rear. He claims to have stated to Mr. Rear that he did not know whether the product in the can was mange oil but thought that it was. This is denied by Rear. Rear took the can without inspecting it or reading the label. After bringing it home he sprayed the hogs with the contents of the can. The hogs showed signs of distress almost at once, and within a short time most of them were dead. It is not questioned that Lysol would be calculated to, and actually did, produce the death of the hogs.

The first question is whether the evidence sustains the findings of the trial court that Lee Robertson, in assuming to deliver the medicine to Rear, acted as agent for defendant, Leslie Robertson. We conclude that the evidence sustains this finding. It appears that the son had been in the habit of assisting his father in the practice of his profession at such times as he was free, and that he accompanied his father on four or five professional calls to plaintiffs' farm. On such calls he had assisted his father in vaccinating horses and in such other professional operations as were involved in the visits. According to the evidence, Rear had been told by Robertson that he could get the mange oil at any time. It was the practice of the doctor to leave his office open even when

he was not there. He did not maintain a telephone at his office, and it was the practice for his wife to answer telephone calls and transmit messages to the doctor. On the occasion in question, plaintiff came to the office, found no one there, and followed the usual practice of telephoning to the doctor's home. In response to this call, the son, who had previously visited the farm of plaintiffs in the role of assistant to his father, appeared at the office, selected the can, and delivered it to Rear.

Under all these facts we conclude that defendant, Leslie Robertson, had created in his son the appearance of authority to act as his agent, at least in such a matter as was here involved, especially in view of the representation to the plaintiff that he could get the mange oil at any time that he called. It was open to the trial court to conclude that at least as to such simple matters as deliveries of specified articles defendant Robertson had created in the son the appearance of authority to act.

It is contended by defendant that liability should not be predicated upon the theory of apparent agency since there is no proof that respondents' damages resulted from reliance thereon. This is grounded upon sec. 265, Restatement, Agency, which provides:

"Except where there has been reliance by a third person upon the appearance of agency, one who has manifested that another is his servant or other agent does not thereby become liable for the other's tortious conduct, although it is apparently authorized or is within the apparent scope of employment."

Comment *a* is in part as follows:

". . . The fact that a person manifests to a third person that another is his agent or servant does not of itself cause harm. It is only where there has been some reliance by a third person upon the appearance of a principal and agent or a master and servant relationship that such appearance can be the basis of liability, and then only if a subsequent harm is in some manner induced by the reliance. . . ."

There is no question concerning these principles. The difficulty is that here plaintiff Rear did rely upon the appearance of Lee's agency. The applicable section of the Restatement is sec. 267 which reads:

"One who represents that another is his servant or other agent and thereby causes a third person justifiably to rely upon the care or skill of such apparent agent is subject to liability to the third person for harm caused by the lack of care or skill of the one appearing to be a servant or other agent as if he were such."

Comment *a* reads:

"The mere fact that acts are done by one whom the injured party believes to be the defendant's servant is not sufficient to cause the apparent master to be liable. There must be such reliance upon the manifestation as exposes the plaintiff to the negligent conduct. The rule normally applies where the plaintiff has submitted himself to the care or protection of an apparent servant in response to an apparent invitation from the defendant to enter into such relations with such servant. A manifestation of authority constitutes an invitation to deal with such servant and to enter into relations with him which are consistent with the apparent authority."

Sec. 265 applies to the cases where there has been no reliance by third persons upon the appearance of agency and this is not such a case. Here there was a sufficient appearance of agency in Lee Robertson to cause plaintiff Rear justifiably to rely upon the care and skill of Lee Robertson. This being true, the inquiry is closed. The principal, upon those facts, is subject to the same liability as though his apparent servant or agent actually had such a status.

We are also of the view that the evidence strongly supports the finding of negligence on the part of Lee Robertson. The can containing the Lysol was the only one of the cans on the shelf which was not labeled "Mange Oil." Its label gave no indication to a person not understanding Latin that it was "Mange Oil," and it seems clear that such a person

would be negligent in making any assumption as to what its contents were, without further investigation. The evidence of Robertson to the effect that he told plaintiff that he did not know what the contents were but supposed that it was mange oil was denied by Rear, and of course the trial court was at liberty to accept the testimony of Rear in this respect.

It being the view of the court that the evidence sustains the finding as to agency and negligence, we deem it unnecessary to consider questions relating to the violation of sec. 146.20, Stats., found by the trial court.

*By the Court.*—Judgment affirmed.