Albert GINSBERG, Appellant,

v.

Richard G. AUSTIN, Administrator, General Services Administration, Appellee.

No. 91–1433.

United States Court of Appeals, Federal Circuit.

June 18, 1992.

James J. McCullough, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., argued for appellant. With him on the brief was Deneen J. Melander.

Steven L. Schooner, Attorney, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Mary Mitchelson, Deputy Director. Also on the brief were William T.K. Dolan and Robert W. Schlattman, Office of General Counsel, General Services Admin., of counsel.

Before ARCHER, PLAGER and CLEVENGER, Circuit Judges.

CLEVENGER, Circuit Judge.

Albert Ginsberg (Ginsberg) appeals the April 4, 1991 decision of the General Services Board of Contract Appeals (Board), which dismissed his claim for lack of standing under the Contract Disputes Act, 41 U.S.C. §§ 602, 609(a)(1) (1988) (CDA). *Ginsberg v. General Servs. Admin.*, 91–2 B.C.A. (CCH) ¶ 23,784 (1991). Because the Board based its decision on an error of law, we reverse the dismissal and remand for adjudication on the merits of Ginsberg's claim.

I

This case involves Ginsberg's claim against GSA for arrearage rent arising from a lease for space in Ginsberg's Plaza West Building (Plaza West). The original lease expired September 30, 1985. GSA and Ginsberg, in a supplemental lease agreement, agreed to extend the term of the lease until September 30, 1986. That agreement contained the following holdover provision:

If, after expiration of the lease, the government shall retain possession of the premises, the lease shall continue in force and effect on a month-to-month basis not to exceed 90 days. Rent shall be paid monthly in arrears on a prorated basis at a rate to be agreed upon.

GSA remained in the Plaza West throughout the holdover period of the lease.

On December 5, 1986 Ginsberg agreed to sell two buildings to London & Leeds (L & L). One of these buildings was the Plaza West. The sales contract specifically provided that L & L would purchase Ginsberg's lease with GSA, and thus required Ginsberg to assign the lease to L & L. The December 5 sales contract set the closing date for December 23, 1986. At the closing, Ginsberg assigned to L & L all his right, title and interest in, to and under the tenant leases:

Assignor hereby assigns to Assignee all of its right, title and interest in, to and under the Tenant Leases, and, from and after the date hereof Assignee hereby accepts such assignment as of the date hereof and hereby agrees to be bound by all provisions of the Tenant Leases governing the Landlord thereunder.

*Ginsberg*, 91–2 B.C.A. at 119, 123.

On December 22, 1986 Ginsberg filed a properly certified claim with the contracting officer for additional rent incurred by GSA's holdover. Earlier, GSA had sent checks dated December 1 and 8, each in the amount of $200,627.94, for occupancy during October and November. The monthly rate under the lease was $329,649.18. In addition to the rent deficiency, Ginsberg's claim also included a rent increase of $1,095.48 per month, reflecting claimed increased operating costs, as well as a lump sum adjustment of $106,414.53 for a real estate tax escalation. Ginsberg's letter also told of the imminent sale of the Plaza West.

After the sale, L & L's counsel contacted GSA about the change in the Plaza West's ownership. GSA advised L & L that it required evidence of transfer of title, a list of partners or corporate officers, and the new lessor's IRS identification number. GSA also stated a further requirement:

Completion of the Assignment and Assumption form (copy enclosed) by the Successor–Lessor assuming, approving and adopting the GSA lease and agreeing to be bound by its terms and by the prior lessor waiving all rights under the GSA lease against the United States of America, except any unpaid rent due the lessor through a specified date.

*Id.* Ginsberg completed the Assignment and Assumption form on January 29, 1987. He thus agreed that "said lease is as-

signed, transferred, and conveyed to ... London & Leeds [and he] relinquishes all rights under the lease agreement effective December [ ] 1986." *Id.* at 119, 124. L & L likewise agreed to be bound by the lease.

GSA ultimately vacated the Plaza West on February 29, 1988. Subsequently, L & L and the government settled a lawsuit brought by L & L for just compensation for a 5th Amendment taking. The parties stipulated that the taking occurred from December 29, 1986 through February 29, 1988.

The contracting officer denied Ginsberg's claims for unpaid rent, *inter alia* on the grounds that Ginsberg lacked standing under the CDA.

## II

Ginsberg timely appealed to the Board. The Board, however, agreed with the contracting officer that Ginsberg had no standing under the CDA. Specifically, the Board construed Ginsberg's contract with L & L as an unqualified transfer to L & L of all right, title, claim and interest in the lease, including claims for back rent. The Board then held that pursuant to the Anti–Assignment Acts, 41 U.S.C. § 15 (1988) and 31 U.S.C. § 3727 (1988), the government by a novation accepted the assignments. That being so, Ginsberg was held to lack privity with the government after GSA accepted the assignments. In the absence of privity Ginsberg was no longer a contractor within the contemplation of the CDA, thus he lacked standing under it to make any claim on the government. The Board therefore dismissed his claim.

## III

The linchpin of the Board's decision is the purely legal determination that upon transfer of real property, all rights to back rent are transferred to the assignee unless those rights are expressly reserved to the assignor:

> We have no quarrel with the statement that the buyer assumed the rights and obligations from the date of closing forward. This, however, does not mean that from *that* date forward, preexisting

contract rights and obligations have not been effectively transferred to the buyer from the seller. Indeed, in the absence of qualifying language to the contrary, we assume that with successor contractors, this is what reasonably should be expected to occur.

*Ginsberg,* 91–2 B.C.A. at 119, 126.

■ Section 609(b) of the CDA governs our review of the Board's decision. 41 U.S.C. § 609(b) (1988). While the legal determinations of the Board are not binding on this Court, they are often helpful, even if not compelling. *US West Communications Servs. Inc. v. United States,* 940 F.2d 622, 625 (Fed.Cir.1991). However, when the Board's legal interpretation is unsupportable and no other grounds exist upon which to uphold the decision, we must reverse or vacate. *Id.*

■ "It is well settled that contracts to which the government is a party—and though a lease may concern and convey a property interest it is also very much a contract—are normally governed by federal law, not by the law of the state where they are made or performed." *Prudential Ins. Co. of Am. v. United States,* 801 F.2d 1295, 1298 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1086, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). Here, though, the parties do not cite, and we have not found, any federal law dispositive of the issue of whether rights to back rent are presumed transferred unless expressly reserved. Indeed, the government conceded at oral argument that no legal authority, federal, state or common law, supports the Board's interpretation that the right to back rent travels with the assignment of a lease, absent express reservation.

Since federal law does not answer the issue, we look to general property and contract law principles as they are embodied in state law pronouncements. *See id.; Forman v. United States,* 767 F.2d 875, 880 (Fed.Cir.1985); *Keydata Corp. v. United States,* 504 F.2d 1115, 1123–24, 205 Ct.Cl. 467 (1974). Two federal courts in construing state law have held that "it is well settled that in the absence of an express

intention to do so, an assignment of a reversionary interest in a lease will not cover rent already accrued." *Shell Petroleum Corp. v. Jackson,* 77 F.2d 340, 342 (6th Cir.1935); *see also Federal Savings & Loan Ins. Corp. v. C & J Oil Co.,* 632 F.Supp. 1296, 1300 (W.D.Va.1986) ("It is well established in leases involving real property that absent a clearly expressed intention to the contrary, the assignment of [a lease] does not transfer the right to rental payments already accrued but unpaid at the time of assignment."). While the federal courts' interpretations of state law is not dispositive, both state law and respected treatises are in harmony with the federal courts' construction of state law.

As a matter of property law, the state courts uniformly have held that rents when due and owing become personal property, "constitut[ing] mere choses in action which are not a part of the land and do not pass as incident to a transfer of the reversion." *Acherman v. Robertson,* 240 Wis. 421, 3 N.W.2d 723, 730 (1942). *See also Ennis v. Ring,* 49 Wash.2d 284, 300 P.2d 773, 776 (1956); *Restatement (Second) of Property: Landlord & Tenant* § 16.2(1) (1977). Thus, the "transfer of ... real estate subject to the lease does not carry with it any right to accrued rents then unpaid. These belong to the person who was the landlord at the time of their accrual and not to the grantee, unless assigned to him." *Velishka v. Laurendeau,* 100 N.H. 46, 118 A.2d 600, 602 (1955) (citation omitted). *See also, e.g., Williams v. Martin,* 83 Ohio App. 130, 82 N.E.2d 547, 547–48 (1948); *Gray v. Callahan,* 143 Fla. 673, 197 So. 396, 398–99 (1940); *Rives v. James,* 3 S.W.2d 932, 934 (Tex.Civ.App.1928); 1 Herbert T. Tiffany, *The Law of Real Property* § 116, at 182 (3d ed. 1939).

The law of contracts is consistent with that of property on the subject of assignments. In construing the contract of a trust certificate assignment, California has held

> [u]nless an assignment specifically or impliedly designates them, accrued causes of action arising out of an assigned contract ... do not pass under the assignment as incidental to the contract if they

can be asserted by the assignor independently of his continued ownership of the contract and are not essential to a continued enforcement of the contract.

*National Reserve Co. of Am. v. Metropolitan Trust Co. of Cal.,* 17 Cal.2d 827, 112 P.2d 598, 602 (1941). Additional authorities agree: "the assignment of rights under a continuing contract does not imply an assignment of rights of action for previous breaches of the contract...." 3 Samuel Williston, *A Treatise on the Law of Contracts* § 431, at 175 (3d ed. 1960). "In the absence of an agreement to the contrary, a transfer of the reversion does not carry with it any right to the accrued rents, and after such a transfer the landlord may still recover all rents theretofore accrued." 49 *Am.Jur.2d Landlord & Tenant* § 530, at 512 (1970) (citations omitted); 4 Arthur L. Corbin, *Corbin on Contracts: A Comprehensive Treatise on the Working Rules of Contract Law* § 876, at 514 (1951). *See also Restatement (Second) of Contracts* § 328 (1981).

Moreover, we take judicial notice that beginning at latest in 1965, GSA itself has followed the law outlined above. Its handbook *Acquisition of Leasehold Interests in Real Property* has, since at least May 19, 1965, instructed its contracting officers who deal with leases to require new owners of property in which GSA leases space to require a letter from the transferor of the property "waiving all rights under the lease as against the United States of America, *except unpaid rent through a specified date.*" GSA Handbook, *Acquisition of Leasehold Interests in Real Property,* Ch. 4, ¶ 4b (January 31, 1977) (emphasis added); GSA Handbook, *Acquisition of Leasehold Interests in Real Property,* Ch. 6, § 4b (June 22, 1981) (current version).

Consequently, in light of this uniform and long-standing legal authority, we hold that as a matter of federal law the Board erred in its application of the law. Under general principles of both property and contract law, Ginsberg cannot be held to have transferred his back rent claim, unless he expressly so stated. He did not do so. Ginsberg thus retained his claim for ac-

crued but unpaid rent, and is therefore possessed of the requisite standing to pursue the merits of that claim.

We therefore reverse and remand to the Board for further proceedings consistent with this opinion.

No costs.

REVERSED AND REMANDED.