# United States Court of Appeals
# for the Federal Circuit

———————————

**DOMINION RESOURCES, INC.,
DOMINION NUCLEAR CONNECTICUT, INC.,
AND VIRGINIA ELECTRIC AND POWER
COMPANY,**
*Plaintiffs-Appellees,*

**v.**

**UNITED STATES,**
*Defendant-Appellant.*

———————————

2009-5031, -5032

———————————

Appeals from the United States Court of Federal Claims
in case Nos. 04-CV-083 and 04-CV-084, Senior Judge Eric
G. Bruggink.

———————————

Decided: April 25, 2011

———————————

BRAD FAGG, Morgan, Lewis & Bockius, LLP, of Washington DC, argued for the plaintiffs-appellees. With him on the brief was DAVID M. KERR.

LISA L. DONAHUE, Trial Attorney, Civil Division, United States Department of Justice, of Washington, DC, argued for the defendant-appellant. With her on the brief were

TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, HAROLD D. LESTER, JR., Assistant Director, CHRISTOPHER J. CARNEY and SCOTT SLATER, Trial Attorneys. Of counsel on the brief were JANE K. TAYLOR and ANDREW P. AVERBACH, Senior Trial Counsel, Office of General Counsel, United States Department of Energy, of Washington, DC.

---

Before NEWMAN, GAJARSA and MOORE, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* MOORE. *Circuit Judge* GAJARSA concurs-in-part and dissents-in-part.

MOORE, *Circuit Judge*.


In this spent nuclear fuel (SNF) case, the United States appeals two narrow issues underlying the Court of Federal Claims' award of damages to Dominion Nuclear Connecticut, Inc. (Dominion) for partial breach of contract. First, the government appeals the trial court's holding that the Assignment of Claims Act does not prohibit the assignment of existing contract claims to Dominion. Because the Nuclear Waste Policy Act (NWPA), 42 U.S.C. § 10222, allows such assignments, we *affirm* the court's holding on this issue. Second, the government appeals the trial court's denial of discovery into benefits accruing to Dominion from the government's failure to perform. Because the one-time fee that Dominion will owe when the government begins accepting SNF is not yet due, the government has no basis for its proposed discovery. We therefore *affirm* on this second issue as well.

BACKGROUND

The general factual background surrounding the SNF cases appears in the trial court's opinions and in earlier opinions by this court. *See Neb. Pub. Power Dist. v. United States*, 590 F.3d 1357, 1359 (Fed. Cir. 2010) (en banc); *Carolina Power & Light Co. v. United States*, 573 F.3d 1271, 1273 (Fed. Cir. 2009); *Dominion Res., Inc. v. United States*, 77 Fed. Cl. 151 (2007); *Dominion Res., Inc. v. United States*, 84 Fed. Cl. 259 (2008). We recount here only the facts pertinent to this appeal.

The NWPA authorizes the United States Department of Energy (DOE) to enter into contracts with utility companies for the disposal of the utilities' high-level nuclear waste and spent nuclear fuel (SNF). 42 U.S.C. § 10222(a). By law, the Nuclear Regulatory Commission cannot renew the license of any utility that has not entered into such a contract with the DOE. 42 U.S.C. § 10222(b)(1)(A). Using notice and comment rulemaking, the DOE promulgated a Standard Contract, codified at 10 C.F.R. § 961.11, which contains the material terms of its agreements with the utilities. 48 Fed. Reg. 16590-01 (Apr. 18, 1983). Under the Standard Contract, the DOE was to accept delivery of the SNF no later than January 31, 1998. The DOE partially breached the Standard Contracts it entered into with the nuclear utilities because it has yet to accept SNF from the utilities. *See Carolina Power*, 573 F.3d at 1273. It is unknown when DOE will perform under the Standard Contracts, and the utilities in this case and others seek mitigation damages incurred in storing the SNF.

DISCUSSION

## Assignment of Claims

In 1983, Dominion's predecessor, Northeast Utilities, executed three Standard Contracts for the disposal of SNF from its three nuclear power plants at the Millstone Power Station near New London, Connecticut. When Northeast Utilities sold Millstone to Dominion in 2001, it also assigned the three Standard Contracts to Dominion. *Dominion*, 84 Fed. Cl. at 261. The assignment stated that Northeast transferred to Dominion, along with title to the SNF, "all rights of the Sellers . . . under the DOE Standard Contracts (including all rights to any claims of Sellers related to DOE defaults thereunder)." J.A. 1613.

In the instant suit, Dominion claimed $52.0 million in interim storage costs, including $12.1 million incurred by Northeast prior to Dominion's acquisition of the Millstone facility. *Dominion*, 84 Fed. Cl. at 263, 285. The Court of Federal Claims determined that approximately $200,000 of the pre-acquisition damages lacked sufficient evidentiary support and another $1 million was not recoverable because Dominion was unable to demonstrate that the costs incurred were caused by the government's breach. *Id.* at 284-85. After also disallowing some of the claimed post-acquisition damages, the trial court awarded Dominion approximately $42.7 million, of which $10.9 million was incurred prior to Dominion's acquisition of Millstone. *Id.* at 263; Appellee's Br. 2.

At issue here is the pre-acquisition portion of the damages awarded to Dominion. The government does not dispute Dominion's entitlement to the interim storage costs for the SNF which it incurred after it acquired Millstone. The government also does not dispute its responsibility for

interim storage costs for the SNF following the breach and up until Dominion's acquisition of Millstone (the $10.9 million). The government's argument on appeal, however, is that Dominion is not entitled to sue the government for the $10.9 million incurred by Northeast Utilities for storing the SNF. Moreover, the government does not dispute that pursuant to the contract in which Northeast Utilities sold Millstone to Dominion, both parties clearly intended for the sale to include the transfer of the claim against the government for the pre-acquisition interim storage fees. Rather the government argues that Northeast Utilities was not permitted to transfer its claim against the government for interim storage fees – that such a transfer is barred by the Assignment of Claims Act, Pub. L. No. 97-258, § 1, 96 Stat. 976 (codified at 31 U.S.C. § 3727) (Claims Act).

The Claims Act generally prohibits the assignment of a claim against the government until "after [the] claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." 31 U.S.C. § 3727. A similar statute, 41 U.S.C. § 15 (Contracts Act), generally prohibits the assignment of contracts. The government may waive these restrictions. *Tuftco Corp. v. United States*, 614 F.2d 740, 745 (Ct. Cl. 1980).

At trial, the government argued that the NWPA waives the provisions of the Contracts Act but not those of the Claims Act, thus preventing the transfer of any claim for pre-assignment damages from Northeast Utilities to Dominion. *Dominion*, 84 Fed. Cl. at 286. The government also argued that pursuant to *Ginsberg v. Austin*, 968 F.2d 1198, 1199 (Fed. Cir. 1992), Congress must, but did not, expressly waive the Claims Act as to existing breach of contract claims. 84 Fed. Cl. at 286. The trial court disagreed, ruling that the NWPA provides a statutory waiver to the Claims Act and that the agreement assigning the Standard Con-

tracts to Dominion specifically included the right to assert an existing breach of contract claim. *Id.* at 286.

We review the CFC's statutory interpretation and legal conclusions de novo and its factual findings for clear error. *Heisig v. United States*, 719 F.2d 1153, 1158 (Fed. Cir. 1983). We begin our interpretation with the statutory language. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980). The relevant portion of the NWPA states: "The rights and duties of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radio-active waste involved." 42 U.S.C. § 10222(b)(3). After notice and comment rulemaking, the DOE adopted similar language in the Standard Contract: "The rights and duties of the Purchaser may be assignable with transfer of title to the SNF" with 90 days notice to the government. 10 C.F.R. § 961.11, Art. XIV.

As it did at trial, the government argues on appeal that Congress waived the Contracts Act but not the Claims Act by stating in the NWPA that "[t]he rights and duties of a party to a contract" are assignable. Relying on *Ginsberg*, the government argues that the Claims Act requires a specific, express waiver for existing claims, and asserts that the NWPA does not provide one. The government also asserts that Congress' use of the word "contract" but not "claim" in the NWPA draws a distinction between the assignment of an existing contract and the assignment of an existing claim for damages, and because the Claims Act and the Contracts Act are separate statutes, assignments of contracts and assignments of claims must be treated differently. Citing *Tuftco*, 614 F.2d at 744, the government argues that "the conceptual difference" between the statutes is that the Claims Act "pertains to claims for work already done" and the Contract Act "is more concerned with continu-

ing obligations." Thus, according to the government, the NWPA allows the assignment of "continuing rights and duties" under the contract, but not "assignment of claims that accrued prior to contract assignment."

The issue before us is whether the language which permits assignment of "the rights and duties of a party to a contract" includes the right to assign existing damages stemming from a breach of contract claim. Does this language allow the transfer of the damages claim for breach along with the transfer of the contract? We conclude that it does. The statutory language is broad and allows for transfer of not just the contract, but transfer of "the rights and duties *of a party* to a contract." One of the rights of a party to a contract is the right to bring a claim for damages resulting from breach. The government's reading of the NWPA modifies its plain language in one of two ways: it either reads into the NWPA the word continuing (i.e., only *continuing* rights and duties may be assigned); or it reads out "the rights and duties of a party" (i.e., only a contract may be assigned). The "rights and duties of a party to a contract" encompass not just the party's continuing rights and duties under the contract, but also the party's existing right to enforce the contract for an ongoing breach and to collect damages that have been incurred. *See, e.g.*, Restatement (Second) of Contracts § 346 ("The injured party has a right to damages for any breach by a party against whom the contract is enforceable. . . ."). Although the Claims Act and the Contracts Act are separate statutes, the *Tuftco* court recognized that the "concerns of the two statutes and the legal concepts involved in their applicability are the same." *Tuftco*, 614 F.2d at 744 n.4. The plain language of the NWPA provision states that all rights *of a party* to a contract are assignable. In this case, it is undisputed that in its transfer of Millstone, Northeast Utilities intended to assign its claim for interim storage fees. We see no reason to read

a limitation into the text of the NWPA regarding claims for damages for an existing, ongoing partial breach.

While it is certainly true that the bare assignment of a contract does not transfer all accrued claims, here, Congress' intent is manifest in the plain language of the NWPA: a party to the Standard Contract may assign its rights. This includes the party's right to collect damages incurred due to an existing, ongoing breach. *Ginsberg*, a case decided under state property laws pertaining to real property is not to the contrary. *Ginsburg* recites no requirement that the transfer of an existing breach of contract cause of action requires a separate, specific, express designation of the claim in the assigning document. On the contrary, *Ginsberg* states that a contract assignment may "specifically or impliedly designate" accrued causes of action. 968 F.2d at 1201. We conclude Congress permitted just such a designation in the NWPA.

The government further argues that our conclusion subverts the purpose of the Claims Act, which "allow[s] the government to deal solely with the original contractor," protects the government's ability to defend itself by ensuring availability of evidence, and reduces the possibility of multiple payments of claims. As an initial matter, these policy arguments do not trump the plain language of the statute. Moreover, these policy concerns are not implicated here. This is not a case where there is any confusion over whether the parties intended to transfer the right to sue for pre-acquisition interim storage fees – it is undisputed that they did. A party to a standard contract cannot transfer its rights and duties to another party without also transferring title to the SNF. Hence, the party who is suing for interim

storage fees is suing for all interim storage fees.[1]  Moreover, the plaintiff has the burden to prove damages, and indeed, the trial court excluded a portion of Dominion's claimed damages as unsupported.  84 Fed. Cl. at 284.  Finally, the government does not assert that it was unable to access any needed information through discovery.  The government does not appear to have suffered any harm from the consolidation of the interim storage fee claim with a single party.

Northeast Utilities and Dominion complied with the requirements of the Standard Contracts and the NWPA when they executed the purchase agreement, which assigned to Dominion along with title to the SNF, "all rights . . . under the DOE Standard Contracts (including all rights to any claims of [Northeast Utilities] related to DOE defaults thereunder)."  J.A. 1613.  Accordingly, Dominion has the right to collect pre-assignment damages for the government's ongoing partial breach of Dominion's Standard Contracts.

---

[1]    The government asks us to hold that if "the 'rights and duties of a party to a claim' encompass the right to pursue damages claims, the contract holder should be required to assign *all* claims."  Appellant Br. 22 (emphasis in original).  We see no such requirement in the NWPA or the Standard Contract.  While the language permits assignment of the claims, the language does not require such assignment. We appreciate that it would certainly be easier for the government to litigate against a single party for all interim storage fees, as it is able to do in this case.  Whether to transfer a right to existing claims, however, is up to the parties to contract – in this case, the government is realizing exactly this efficiency given that it is undisputed that Dominion has been transferred this right by Northeast Utilities.

### One-Time Fee

Seeking to offset damages, the government also appeals the trial court's dismissal of certain counterclaims and defenses. Specifically, the government asserts that because Dominion's one-time fee is not yet payable because of the government's breach, Dominion may have profited by having use of that money in the meantime. Thus, the government reasons, it is entitled to discovery into any economic benefit obtained by Dominion by deferring payment of the one-time fee until the government finally performs.

Within two years of execution of a Standard Contract, a contracting utility is required to select one of three options for the payment of a one-time fee for the disposal of SNF generated before April 7, 1983:

> (a) Option 1 -- The Purchaser's financial obligation for said fuel shall be prorated evenly over forty (40) quarters . . . .

> (b) Option 2 -- The Purchaser's financial obligation shall be paid in the form of a single payment anytime prior to the first delivery . . . and shall consist of the fee plus interest on the outstanding fee balance. Interest is to be calculated from April 7, 1983, to the date of the payment based upon the 13-week Treasury bill rate . . . .

> (c) Option 3 -- The Purchaser's financial obligation shall be paid prior to June 30, 1985, or prior to two (2) years after contract execution, whichever comes later . . . .

Standard Contract, art. VIII.B.2. No one-time fee is payable for Millstone Unit Three because it did not generate any

electricity prior to April 7, 1983. For Millstone Units One and Two, Northeast Utilities selected Option 2, and agreed to pay a total of $82.1 million prior to the DOE's acceptance of its first delivery of SNF. The parties do not dispute that this one-time fee is not yet due because of the government's breach.

According to the government, Dominion (or its predecessor) would have paid the one-time fee by 1998 had the government timely performed under the Standard Contract. The government asserts that it should be allowed to investigate if Dominion has received any economic benefit from having the use of that money in the meantime by investing, financing other projects, or avoiding the need to obtain loans. The Court of Federal Claims disagreed, and noted that the "one-time fee is simply not yet due under the Standard Contract, and the parties have contracted for how much interest accrues in the interim." 77 Fed. Cl. at 157. The court concluded that "[u]ntil the one-time fee becomes due, the government does not have a claim for early payment." *Id.* Nonetheless, the government asserts on appeal that Dominion should not be put into a better position or receive a windfall because of the government's breach.

The government previously argued a variant of this theory before us in another SNF case. *See Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268, 1280 (Fed. Cir. 2008). In that case, we found that the utility had no obligation to pay the one-time fee that was not yet due according to the terms of Option 2. *Id.* Our holding in *Yankee Atomic* forecloses the government's arguments in this case. Because the injured utilities are not relieved by the government's partial breach from their obligation to pay the fee with interest when it comes due, the government is not entitled to an offset for any damages awarded. *Id.* Indeed, in our analysis *Yankee Atomic*, we quoted the case on appeal before

us now.  We stated that the Court of Federal Claims "correctly note[d]" that

> [The utilities] still have the SNF, the government still has the obligation to pick it up, and plaintiffs still have to pay the one-time fee when it becomes due. The only thing that is different from the contract scenario is that [the utilities'] claim to have been forced to absorb unnecessary interim storage costs. If the government reimburses such costs, it hardly puts plaintiffs in a better position.

*Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268, 1281 (Fed. Cir. 2008) (quoting 77 Fed. Cl. at 156).

We see no merit whatsoever to the government's argument that Dominion may have benefited from the government's breach.  Moreover the parties agreed ex ante, expressly in the contract that the utility would pay the one-time fee with interest accruing from April of 1983 at the thirteen-week Treasury bill rate.[2] Dominion cannot ask for increased damages should its investment of the one-time fee return less than the thirteen-week rate, and the government

---

[2]    We note that, in draft form, Option 2 of the Standard Contract did not include payment of interest for deferral of the one-time fee. *See* Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste, 48 Fed. Reg. 5458, 5464 (Feb. 4, 1983) (draft rule).  But in response to public comments, the final version of the Standard Contract "incorporated provisions which allow a Purchaser to finance its contractual fee obligation until paid, under terms which recognize the time value of money." Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, 48 Fed. Reg. 16590, 16593 (Apr. 18, 1983) (commentary on final rule).  Because the parties have contractually assigned a specific value to the cost of capital involved, the United States cannot seek to recover excess gains from Dominion's investments

cannot ask for a reduction in damages should Dominion's investments return more.  For either party, such gains or losses are too remote, too far removed from the breach, and the result of intervening investment risk.  *See LaSalle Talman Bank v. United States,* 317 F.3d 1363, 1373 (Fed. Cir. 2003); *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1072 (Fed. Cir. 2001).

For the forgoing reasons, we affirm the Court of Federal Claims' award of damages to Dominion, including its dismissal of the government's defenses and counterclaims regarding the one-time fee.

**AFFIRMED**

# United States Court of Appeals for the Federal Circuit

_____

DOMINION RESOURCES, INC.,
DOMINION NUCLEAR CONNECTICUT, INC.,
AND VIRGINIA ELECTRIC AND POWER
COMPANY
*Plaintiffs-Appellees,*

v.

UNITED STATES,
*Defendant-Appellant.*

_____

2009-5031, -5032

_____

Appeal from the United States Court of Federal Claims in case nos. 04-CV-083 and 04-CV-084, Senior Judge Eric G. Bruggink.

_____

GAJARSA, *Circuit Judge*, concurring-in-part and dissenting-in-part.

Two statutory provisions, 41 U.S.C. § 15 (the "Contracts Act") and 31 U.S.C. § 3727 (the "Claims Act"), generally restrict assignments of contracts and claims against the Government. *Tuftco Corp. v. United States*, 222 Ct. Cl. 277, 614 F.2d 740, 744 (1980). I agree with my colleagues that the Nuclear Waste Policy Act of 1982 ("NWPA") and the Standard Contract waive the restrictions of the Contracts Act. But because I conclude that

the restrictions of the Claims Act were not waived, I respectfully dissent from Part I of the majority opinion.[1]

## I.

Congress first restricted the assignment of claims against the United States in 1846. *See* An Act in Relation to the Payment of Claims, ch. 66, 9 Stat. 41 (1846). Initially of narrow scope, the restriction was subsequently extended to "all claims against the United States, whether allowed by special acts of Congress, or arising under general laws or treaties, or in any other manner whatever" following a series of fraudulent claims associated with the Mexican War. An Act to Prevent Frauds upon the Treasury of the United States, ch. 81, § 7, 10 Stat. 170, 171 (1853); *see also* H.R. Rep. 32-1 (1852). In doing so, Congress decreed

> That all transfers and assignments hereafter made of any claim upon the United States, or any part or share thereof, or interest therein . . . shall be absolutely null and void, unless the same shall be freely made and executed . . . ***after the allowance of such claim, the ascertainment of the amount due, and the issuing of a warrant for the payment thereof***.

10 Stat. at 170 (emphasis added). In its current form, the Claims Act provides, in relevant part, that

---

[1] The majority also holds that the United States cannot seek an offset for any benefit to Dominion from the delay in paying the one-time fee. *Majority Op*. at 10-13. Because I would find that Northeast Utilities' assignment of unascertained claims is barred by the Claims Act, I join Part II of the Majority Opinion only to the extent the claims in question accrued after the contracts were assigned to Dominion. I concur fully, however, in the majority's reasoning on the issue of offset.

> An assignment may be made ***only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued.*** The assignment shall specify the warrant . . . and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official . . . and the official shall certify the assignment.

31 U.S.C. § 3727(b) (emphasis added). Thus, while the specifics of this provision have been amended over the years, the requirement that an assignment be made only after allowance and ascertainment remains. *See Fireman's Fund Ins. Co. v. England*, 313 F.3d 1344, 1349 (Fed. Cir. 2002).

Despite the facially strict language of the Claims Act, the Supreme Court created an exception for transfers by operation of law. *See United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 375-76 (1949). This exception grew out of the Court's decision in *Erwin v. United States*, which held that "[t]he passing of claims to heirs, devisees, or assignees in bankruptcy is not within the evil at which the statute aimed," and therefore a claim against the United States could be transferred to the trustee of a bankrupt's estate. 97 U.S. 392, 397 (1878).

In contrast to transfers by operation of law, the Supreme Court has generally held that the Claims Act precludes voluntary assignments. *E.g.*, *United States v. Dow*, 357 U.S. 17, 20 (1958); *United States v. Shannon*, 342 U.S. 288, 292 (1952); *Spofford v. Kirk*, 97 U.S. 484, 489 (1878); *see also Aetna Cas.*, 338 U.S at 375 ("[T]he Court has always stated the flat exception of all transfers by operation of law, as distinguished from voluntary transfers."). Indeed, the Court has recognized as exceptions to the broad sweep of the statute only two types of

voluntary assignments: "transfers by will" and "general assignments for the benefit of creditors." *Shannon*, 342 U.S. at 292.

## II.

Here, the claim was voluntarily assigned, but it was neither ascertained nor allowed at the time of assignment. The assignment was therefore contrary to the requirements of the Claims Act. It does not fall within either of the recognized exceptions, and it clearly implicates the mischief that the Claims Act was intended to avoid: namely, forcing the United States to deal with multiple parties, including strangers to the original transaction, and the attendant litigation surrounding the assignment itself.[2, 3] *See, e.g.*, *Shannon*, 342 U.S. at 291-92 (one purpose was "to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant"). In my judgment, the assignment to Dominion was thus precluded by the Claims Act.

---

[2] The majority insists that "these policy arguments do not trump the plain language of the statute." *Majority Op.* at 8. In doing so, the majority misses the point. Here, the language in the NWPA is not unambiguous. I believe that, where such ambiguity exists, the policies promoted by the Claims Act are relevant to our determination of whether the "plain language" in question is sufficient to support a waiver.

[3] The United States identified specific deficiencies in its ability to discover information from Northeast Utilities that were directly relevant to the claim at issue. Appellant Br. at 20-21. It is not enough to say that the United States could have resolved these issues by joining Northeast Utilities as an involuntary plaintiff; that argument was soundly rejected in *Shannon*, 342 U.S. at 284.

Nevertheless, because the Claims Act is for the protection of the United States, the United States may waive it. *Delmarva Power & Light Co. v. United States*, 542 F.3d 889, 893-94 (Fed. Cir. 2008). In this case, the majority finds waiver via the language of 42 U.S.C. § 10222 and the Standard Contract. *Majority Op.* at 7-8.

The NWPA provides:

The *rights and duties* of a party to a contract entered into under this section may be assignable with transfer of title to the spent nuclear fuel or high-level radioactive waste involved.

42 U.S.C. § 10222(b)(3) (emphasis added). Similarly, the Standard Contract provides:

The *rights and duties* of the Purchaser may be assignable with transfer of title to the SNF and/or HLW involved; provided, however, that notice of any such transfer shall be made to DOE within ninety (90) days of transfer.

10 C.F.R. § 961.11 at Art. XIV (emphasis added). Clearly, this language supports a conclusion that *something* may be assigned. In the majority's opinion, the phrase "rights and duties" supports an expansive waiver of both the Contracts Act and the Claims Act. In support of its holding, the majority cites only to a single sentence in the Restatement (Second) of Contracts: "[t]he injured party has a right to damages for any breach by a party against whom the contract is enforceable . . . ." *Majority Op.* at 7.

While I agree that claims resulting from a breach of contract *can* be conceptualized as a "right" under the contract, I am unwilling to interpret broadly that provision of the NWPA given Congress's history of explicitly waiving the Claims Act when it desires to do so. For example, Congress has said:

> Hereafter the provisions of section thirty-four hundred and seventy-seven of the Revised Statutes shall not apply to payments for rent of post-office quarters made by postmasters to duly authorized agents of the lessors.

Act of May 27, 1908, ch. 206, 35 Stat. 406, 411 (referencing prior codification).  And:

> Notwithstanding the provision of section 3727 of Title 31, the Secretary is authorized to recognize validly executed assignments made by Regional Corporations of their rights to receive payments from the Alaska Native Fund.

43 U.S.C. § 1628(a); *see also* 25 U.S.C. § 1725(d)(2); 22 U.S.C. § 4060(a)(2).  Indeed, the Claims Act itself excepts certain types of assignments.  31 U.S.C. § 3727(c).  Particularly in light of this history, I believe the majority fails to give even short shrift to the general rule that statutes should be interpreted so as to avoid one statute repealing or overriding another.  *See Sec. Indus. Ass'n v. Bd. of Governors of Fed. Res. Sys.*, 468 U.S. 137, 176 (1984).

My reticence is reinforced by the strong disfavor shown voluntary assignments of claims.  *E.g.*, *Dow*, 357 U.S. at 20; *Shannon*, 342 U.S. at 292-93.  And the Restatement itself—the only source cited by the majority in support—appears to draw a distinction between rights under a contract and a claim for breach, with the latter being based on the former, but one step removed.  Restatement (Second) of Contracts § 236 ("A claim for damages for partial breach is one for damages based on only part of the injured party's remaining rights . . . .").  I therefore conclude that the use of the phrase "rights and duties" in the NWPA and Standard Contract refers only to the immediate rights and duties associated with the contract itself, not an unascertained monetary claim for

breach that is one-step removed from the statutory "rights and duties" provision.  I would thus find waiver of the Contracts Act, 41 U.S.C. § 15, but not the Claims Act, 31 U.S.C. § 3727.