NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SYSTEM FUELS, INC. AND ENTERGY ARKANSAS, INC.,**
*Plaintiffs-Cross Appellants,*

v.

**UNITED STATES,**
*Defendant-Appellant.*

---

2008-5025, -5035

---

Appeal from the United States Court of Federal Claims in Case No. 03-CV-2623, Judge Charles F. Lettow.

---

Decided: January 19, 2012

---

CATHERINE E. STETSON, Hogan Lovells US, LLP, of Washington, DC, argued for plaintiffs-cross appellants. With her on the brief was DOMINIC F. PERELLA. Of counsel on the brief was LAYTON JAGER SMITH, JR., Wise, Carter, Child & Caraway, P.A., of Jackson, Mississippi. Of counsel was PAUL ANTHONY WERNER, III, Hogan Lovells US, LLP, of Washington, DC.

HAROLD D. LESTER, JR., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for the defendant–appellant. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, ALAN J. LO RE, Assistant Director, and SCOTT R. DAMELIN, Trial Attorney. Of counsel on the brief was JANE K. TAYLOR, Office of General Counsel, United States Department of Energy, of Washington, DC.

––––––––––––––––

Before RADER, *Chief Judge*, NEWMAN and LINN, *Circuit Judges*.

Opinion for the court filed by *Chief Judge* RADER. Opinion concurring-in-part, dissenting-in-part filed by *Circuit Judge* NEWMAN.

RADER, *Chief Judge*.

After trial, the United States Court of Federal Claims awarded Plaintiffs-Cross Appellants System Fuels, Inc. and Entergy Arkansas, Inc. (collectively "SFI Arkansas" or "Plaintiffs") damages arising from the Department of Energy's ("DOE") partial breach of a contract. *System Fuels, Inc. v. United States*, 79 Fed. Cl. 37, 40 (2007). Because the trial court properly declined to offset the damages award by the amount of Plaintiffs' one-time fee, this court affirms. On the other hand, this court reverses the trial court's denial of Plaintiffs' capital suspense loader costs. This court also remands the action for analysis in view of this court's decisions in *Pacific Gas & Electric Co. v. United States*, 536 F.3d 1282 (Fed. Cir. 2008) and *Yankee Atomic Electric Co. v. United States*, 536 F.3d 1268 (Fed. Cir. 2008).

I.

In 1983, the parties entered into a Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste ("Standard Contract"), under the Nuclear Waste Policy Act of 1982, Pub. L. No. 97-425. 96 Stat. 2201 (codified at 42 U.S.C. §§ 10101-10270 (2006)). 79 Fed. Cl. at 42. This contract required DOE to begin collecting spent nuclear fuel ("SNF") from Plaintiffs no later than January 31, 1998 in exchange for their payment of two types of fees into the Nuclear Waste Fund. *Id.* at 41-42. The first fee is a one-time fee based on energy generated and sold before April 7, 1983. *Id.* at 41. The Standard Contract offered three options for payment of the one-time fee: (1) payment in full by June 30, 1985 without interest, (2) deferred payments over 40 quarters with interest accruing on the unpaid principle, or (3) payment in full plus interest prior to the first delivery of SNF to DOE. Interest was set at the 13-week Treasury bill rates. *Id.* at 42. SFI Arkansas contracted for the third option, and as of, June 30, 2006, the expected one-time fee totaled approximately $165 million. *Id.* at 43. The contract did not address some specifics, but the parties agreed that in a non-breach world, DOE would have begun collecting SNF from SFI Arkansas in 2001, and the one-time fee would have been due before that collection. SFI Arkansas remains liable to pay the one-time fee before DOE begins collection. *Id.* at 54-55, 72.

The second type of fee was a continuing fee based on the amount of energy produced after April 7, 1983. *Id.* at 41. SFI Arkansas has paid this continuing fee since the Standard Contract was executed for a total of $269 million (as of December 2006) and approximately $13 to $15 million per year thereafter. *Id.* at 43.

The power facility in this case is a two-unit Arkansas Nuclear One ("ANO") power plant in Russellville, Arkansas. *Id.* at 40. Unit One began operation in 1974 and has permission to operate through 2034. Unit Two began operation in 1978 with permission to operate through 2038. *Id.* at 48. The record shows that SFI Arkansas would have provided dry fuel storage in the non-breach world, but the parties dispute the amount of additional storage required to account for the Government's breach. *Id.* at 55.

In 1996, Plaintiffs constructed dry fuel storage — independent spent fuel storage installation ("ISFSI") — and began loading VSC-24 "dry casks" into the storage facility. *Id.* at 49. When the VSC-24 dry casks reached capacity with no prospect the DOE would perform on the contract, SFI Arkansas determined that it would need additional storage. *Id.* SFI Arkansas switched to Holtec dry casks and purchased 22 of these casks because the VCS-24 dry casks were no longer being produced. *Id.* at 49-50. The transition to the Holtec dry casks required SFI Arkansas to modify its facilities, which included the purchase of a new crane, construction of a new ISFSI pad, and modification to the SNF pool-to-cask loading system. *Id.* at 54, 60-61.

The trial court relied upon this court's decision in *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1341 (Fed. Cir. 2000), and granted SFI Arkansas' motion for summary judgment of partial breach. 79 Fed. Cl. at 74. SFI Arkansas used five capital work orders to track the costs associated with their mitigation efforts, classified as follows: (i) expansion of ANO's ISFSI and necessary equipment ($6,139,210), (ii) ANO site modifications ($4,229,607), (iii) dry fuel storage procurement ($33,659,710), (iv) dry fuel storage cask loading ($4,011,127), and (v) ANO's spent fuel pool modifications

($4,152,778). *Id.* at 54. Two additional work orders were for team support of Nuclear Fuel Services totaling $1,420,681 and property taxes amounting to $160,652. *Id.* An eighth category of costs claimed by SFI Arkansas was for financing costs and mitigating degradation of the Boraflex. *Id.* In total, SFI Arkansas sought over $70 million in damages based on their calculation of when the Government would have collected SNF from ANO. *Id.* at 56-58.

The parties agreed that DOE would have begun collecting SNF from ANO in 2001 but differed in the acceptance rate. *Id.* at 55. After a seventeen-day trial, site visit, and post-trial briefing, the trial court adopted the acceptance rate offered by SFI Arkansas and awarded damages in the amount of $48,651,728, but rejected their claims for project financing costs, administrative and engineering overhead costs, as well as a portion of the salary and non-salary labor costs. *Id.* at 54, 64-68. The trial court denied the Government's claim that the award of damages should be offset by the "economic benefit" obtained by deferred payment of the one-time fee. *Id.* at 74. The Government appeals the trial court's award of damages to Plaintiffs for their mitigation efforts. Plaintiffs cross-appeal the trial court's denial of cost-of-capital and capital suspense loader damages.

## II.

This court reviews factual findings of the United States Court of Federal Claims for clear error. *Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005). Factual findings include "the general type of damages to be awarded . . . , their appropriateness . . . , and rates used to calculate them." *Home Sav. of Am. v. United States*, 399 F.3d 1341, 1347 (Fed. Cir. 2005). The trial court is granted wide discretion in determining an

appropriate quantum of damages. *Hi-Shear Tech. Corp. v. United States*, 356 F.3d 1372, 1382 (Fed. Cir. 2004). "A finding may be held clearly erroneous when . . . the appellate court is left with a definite and firm conviction that a mistake has been committed." 422 F.3d at 1373 (quoting *In re Mark Indus.*, 751 F.2d 1219, 1222-23 (Fed. Cir. 1984)). This court reviews the trial court's legal conclusions without deference. *Yankee Atomic*, 536 F.3d at 1272.

## III.

The trial court erred in its causation analysis. As the parties now acknowledge, this court's decisions in *Pacific Gas* and *Yankee Atomic* require the trial court to perform a substantially different causation analysis. In *Pacific Gas*, this court determined that the process recited in the 1987 Annual Capacity Report was the contractual acceptance rate because it "provide[d] the best available pre-breach snapshot of both parties' intentions for an acceptance rate" and "contemplated full and timely performance" by the Government. 536 F.3d at 1292. Under *Yankee Atomic*, SFI Arkansas has the "burden to prove the contractual acceptance rate and apply the rate before suggesting that the Government's breach was a substantial factor in causing [their] claimed expenses." 536 F.3d at 1273. Therefore, on remand, the trial court must hold SFI Arkansas to this burden. This court will not provide further instructions to the trial court or limit its review because the trial court is vested with the responsibility to determine facts and award the damages supported by those facts. Therefore, this court places no limitations at this point on its remand order.

## IV.

The trial court rejected the Government's claim for an offset because SFI Arkansas received an alleged economic

benefit from the deferral of its payment of the one-time fee. 79 Fed. Cl. at 74. This court has previously addressed the question of whether utilities, such as SFI Arkansas, must pay the one-time fee for the disposal of SNF despite the Government's failure to perform under the Standard Contract. *See Yankee Atomic*, 536 F.3d at 1279. In *Yankee Atomic*, this court determined that "[b]ecause this case presents a partial breach of contract, the [utility's] ongoing contractual obligation has not yet matured under the terms of the contract itself." *Id.* at 1280. Further, the one-time fee cannot be used as a "condition precedent or offset for an award of damages." *Id.*

As this court previously stated, "[j]ust as the utilities cannot now collect damages not yet incurred under the ongoing contract, the Government cannot prematurely claim a payment that has not become due." *Id.* at 1281. This includes any alleged "economic benefit" from deferral of payment of the one-time fee that the Government now attempts to claim as an offset and divorce from the one-time fee itself. In *Dominion Resources, Inc. v. United States*, 641 F.3d 1359, 1360 (Fed. Cir. 2011), this court addressed whether the Government could receive discovery into alleged benefits accrued by a utility due to DOE's failure to perform. This court stated that "[o]ur holding in *Yankee Atomic* foreclose[d] the government's arguments in this case." 641 F.3d at 1365. As such, the Government's attempt here to distinguish its current arguments based on alleged benefits accruing to SFI Arkansas from those previously presented during *Yankee Atomic* are neither persuasive nor successful. *See Dominion Resources*, 641 F.3d at 1365 (stating that this court "see[s] no merit whatsoever to the government's argument that [the utility] may have benefited from the government's breach"). For these reasons, this court affirms the trial

court's denial of the Government's claim for an offset based on the one-time fee.

## V.

On cross-appeal, SFI Arkansas presents the issue of whether the trial court erred in its denial of cost of capital in its award of damages. Before the trial court, SFI Arkansas claimed the cost of financing the expansion of the dry fuel storage project and mitigation of degradation of the Boraflex. 79 Fed. Cl. at 69. The trial court denied SFI Arkansas' claim for cost-of-capital damages because it determined that Plaintiffs did not "establish[ ] that [their] claimed financing costs [were] directly related to required borrowing through specific debt instruments . . ." *Id.* at 70. The trial court stated that *Wickham Contracting Co. v. Fischer*, 12 F.3d 1574 (Fed. Cir. 1994), "[did] not apply in this instance because, among other things, [the utilities had] not shown that [they] borrowed money specifically to pay for the cost of the dry storage project." 79 Fed. Cl. at 70.

SFI Arkansas' claim seeks interest against the Government, which is not recoverable under 28 U.S.C. § 2516(a). This court stated in *England v. Contel Advanced Systems, Inc.*, that "[t]he no-interest rule is an aspect of the basic rule of sovereign immunity." 384 F.3d 1372, 1379 (Fed. Cir. 2004) (citing *Library of Cong. v. Shaw*, 478 U.S. 310, 315 (1986); *Smith v. Principi*, 281 F.3d 1384 (Fed. Cir. 2002)). The no-interest rule requires denial of claims for interest and "interest costs incurred on money borrowed as a result of the government's breach or delay in payment." 384 F.3d at 1379. This court's decision in *Energy Northwest v. United States* addressed the no-interest rule and reaffirmed *England*, which controls this case. 641 F.3d 1300 (Fed. Cir. 2011). As such, SFI Arkansas' claim for cost of capital is barred, and

this court affirms the trial court's denial of this damages claim.

## VI.

SFI Arkansas also cross-appeals the trial court's denial of their capital suspense loader damages as "excessive." The capital suspense loader accounted for overhead costs that were not associated with a particular project because the amount of time expended was in increments of 30 minutes or less. 79 Fed. Cl. at 64. The trial court stated that as a "general matter" overhead costs were "not troublesome," but found this claim to be "problematic" because it was "necessarily imprecise, to the point that this loader is akin to a charge for general management supervision." *Id.* In support of this, the trial court stated the following:

> In procurement law, field and home-office overhead can be allowable costs. Field overhead rates between eight and ten percent have been deemed allowable, and home-office overhead rates of slightly lesser percentages have been included in damage awards. The amount claimed by [SFI Arkansas] in this instance represents 6.9 percent of the total capital costs claimed. However, judged by these somewhat comparable overhead allowances for supervision, [SFI Arkansas'] claimed amount is excessive because all supervising time in increments of one-half hours or more has already been included in specific work orders. The capital suspense loader will be removed from [SFI Arkansas'] damages.

*Id.* at 64-65 (internal citations omitted).

This court has affirmed a trial court's award of overhead costs to a utility whose "internal accounting system

use[d] specific codes to allocate a portion of [the overhead expenses] to particular projects . . ." *Carolina Power & Light Co. v. United States*, 573 F.3d 1271, 1276-77 (Fed. Cir. 2009). In *Indiana Michigan*, this court explained that "[d]amages for a breach of contract are recoverable where: (1) the damages were reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty." 422 F.3d at 1373 (citing *Energy Capital Corp. v. United States*, 302 F.3d 1314, 1320 (Fed. Cir. 2002)). Further, "the amount of damages need not be 'ascertainable with absolute exactness or mathematical precision,' [but] recovery for speculative damages is precluded." *Ind. Mich.*, 422 F.3d at 1373. This court has also determined that "mitigation activities generally were supported by certain overhead services that [the utility] provided for the benefit of all its operations (not only its mitigation activities)." *Energy Nw.*, 641 F.3d at 1309 (relying upon testimony "estimating the portion of . . . overhead costs fairly allocated to support . . . the mitigation via generally accepted accounting practices . . .").

Plaintiffs maintained a particular accounting category for capital suspense loader costs, which included an administrative and general pool as well as a functional specific pool (or a nuclear specific pool). J.A. 1303. As stated by the manager of property accounting for Plaintiff Entergy Services, Inc. and recognized by the trial court, these costs were "calculated based upon the applicable regulations for capital suspense issued by the Federal Energy Regulatory Commission." 79 Fed. Cl. at 64. *See also*, J.A. 1303, 1307. In accordance with Plaintiffs' capital suspense policy, employees maintained records of work completed in increments of less than 30 minutes that were associated with a variety of projects. J.A. 1305.

Monthly allocations distributed the costs across the variety of projects based on rates established in quarterly meetings between a representative of the chief accounting officer and the property accounting group. J.A. 1306, 1308.

The evidence in the record supports SFI Arkansas' claim for capital suspense loader costs. This court finds no basis for the trial court's creation of a rule based on percentages to justify the exclusion of a claim for capital suspense loader costs. Therefore, this court reverses the trial court's exclusion of these costs in its damages award.

## VII.

This court therefore remands for causation analysis in view of *Pacific Gas & Electric Co. v. United States*, 536 F.3d 1282 (Fed. Cir. 2008) and *Yankee Atomic Electric Co. v. United States*, 536 F.3d 1268 (Fed. Cir. 2008). This court also affirms the trial court's denial of an offset in the damages award by the amount of SFI Arkansas' one-time fee and denial of Plaintiffs' claim for financing costs are hereby affirmed. This court reversed the trial court's denial of Plaintiffs' capital suspense loader costs.

## AFFIRMED-IN-PART, REVERSED-IN-PART AND REMANDED.

### COSTS

Each party shall bear its own costs.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SYSTEM FUELS, INC. AND ENTERGY ARKANSAS, INC.,**

*Plaintiffs-Cross Appellants,*

**v.**

**UNITED STATES,**

*Defendant-Appellant.*

---

2008-5025, -5035

---

Appeal from the United States Court of Federal Claims in Case No. 03-CV-2623, Judge Charles F. Lettow.

---

NEWMAN, *Circuit Judge*, concurring in part, dissenting in part.

I concur in the court's opinion and the rulings based thereon, with the exception of the ruling that damages for breach of contract cannot include the cost of financing the construction and storage expenditures required to mitigate the breach. As explained in my dissenting opinion in the companion case, *System Fuels, Inc. v. United States*, No. 2010-5116, -5117, these costs were incurred solely because of the government's breach of contract, and thus are recoverable as damages for the breach.